**ANDROS MARINE CHARTERING CO.,
Plaintiff,**

**v.**

**The TUG GLADIATOR, her engines, boilers, appliances and appurtenances; Nickerson Marine Co.; and Port San Juan Towing Co., Defendants.**

**Civ. No. 254-68.**

United States District Court
D. Puerto Rico.

Dec. 16, 1969.

---

11. See Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Farrell v. Wyatt, 408 F.2d 662, 666 (2d Cir. 1969).

Gustavo A. Gelpi, Nachman, Feldstein, Laffite & Smith, San Juan, P. R., for plaintiff.

Antonio M. Bird, San Juan, P. R., for defendants.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

FERNANDEZ-BADILLO, District Judge.

This suit arises from a charter of two barges owned by plaintiff and a towing contract for the towing of these two barges by the defendants. Originally, the charter and towing contract did not directly involve plaintiff and defendants, as each one negotiated with a certain David Feldman, who is not a party to this action. The contracts involved herein are the charter party of the barge ANDROS (Exhibit 1), and the towing agreement of February 20, 1968, (Exhibit 20). The dispute between the parties to this action commenced when defendants brought the barge ANDROS to San Juan, Puerto Rico, instead of returning her to Port Everglades, Florida.

Actions *in rem* against the tug GLADIATOR and *in personam* against its owner and operators, Nickerson Marine Co. and Port San Juan Towing Co., were filed by the owners of the ANDROS, Andros Marine Chartering Co., alleging hull damage to the barge, deviation, breach of charter, as a result of which consequential losses and expenses were claimed. Defendants' answer denied all the allegations of the complaint, while alleging as sole affirmative defense that the complaint failed to state a cause of action upon which relief could be granted. An amended answer admitted certain allegations previously denied but failed to allege any other affirmative defense. The action came up for trial on the 14th day of April of 1969.

The morning of trial defendants moved for a dismissal of the action or in the alternative for a transfer under the provisions of 28 U.S.C.A. § 1404, on the grounds that the same parties and similar issues were pending before the United States District Court at Charleston, South Carolina, in a case entitled Nickerson Tug & Transit Co. v. David Feldman, Civil No. 68–306. At the request of defendants' counsel, who had come from Charleston for the hearing, a decision on this threshold issue was postponed and the motion taken under advisement, pending the filing of legal memoranda. The hearing on the merits then proceeded, at the end of which the parties were granted time to file proposed findings of fact and conclusions of law.

In a separate order filed simultaneously with this opinion, defendants' pre-trial motions have been denied; and, therefore, a decision on the merits follows. Oral testimony having been heard and duly weighed; exhibits, pleadings, memoranda and proposed findings of fact and conclusions of law having been examined; now, after due deliberation the following findings and conclusions are formulated.

## FINDINGS OF FACT

1. During the fall of 1967, David Feldman was negotiating with Koppers International Co. a contract for the transportation of creosote poles and cross-ties from Charleston, South Carolina and Savannah, Georgia, to Kingston, Jamaica. Since he had no vessels of his own, he had to get a barge and tug. He first contacted Howard Nickerson, Sr., the President of Nickerson Tug & Transit Co.,[1] to engage the services of a powerful tug called the JESSE JAMES. After obtaining available dates and prices, he was then referred by Howard Nickerson, Sr. to the plaintiff, Andros Marine Chartering Co., a corporation wholly owned by Sherwin Grossman and Lawrence Bicaise, which at the time had two barges available, the ANDROS and the ANDROS MARINER.[2]

2. Eventually, after extensive negotiations, Feldman reached an agreement with Koppers International Co. during the early part of 1968. On February 14, 1968, Feldman entered into a charter party with Andros Marine Chartering Co. for the bareboat charter of the barge ANDROS (Exhibit 1). He also chartered the MARINER, which is not involved in this litigation. The ANDROS contract originally called for a charter period commencing on February 24 until March 14, 1968, at a daily hire rate of $150.00. At about the same time, Feldman also entered into a towing contract with Nickerson Tug & Transit Co. for the use of its tug, JESSE JAMES, which contract provided for the towing of the barges in tandem from Port Everglades, Florida, to Savannah, Georgia (the ANDROS) and to Charleston, South Carolina (the MARINER) and from there to Kingston, Jamaica, and return to Port Everglades, Florida.

---

1. Nickerson Tug & Transit Co., Nickerson Marine Towing Co. and Port San Juan Towing Co. are wholly owned corporations of Howard Nickerson, Jr. and Howard Nickerson, Sr.; a fact testified to by the latter. Nickerson Tug & Transit Co. is not a party to this action.

2. To avoid confusion, the barge ANDROS MARINER will be referred to as the MARINER.

3. Pursuant to these contracts, the voyage would commence on February 24, 1968, but because the JESSE JAMES suffered a breakdown and could not be repaired in time, it was postponed. Howard Nickerson, Sr. then offered the services of the smaller tug GLADIATOR, owned by his other corporation, Nickerson Marine & Towing Co., a defendant herein; and Feldman, already unhappy about the situation but in no position to refuse as Koppers International Co. was pressuring him to perform, accepted the substitution. The towing contract was then orally modified to substitute the tug GLADIATOR in place of the JESSE JAMES [3] and to reduce the daily tug hire to $800.00 running time and $700.00 day time. The Court finds that the towing contract dated February 21, 1968, as orally modified, represents the agreement between Nickerson Marine Towing Co. and David Feldman. Howard Nickerson, Sr., at trial, admitted this fact and further testified that another contract with those terms but with the above changes was prepared, signed and mailed by him to Feldman. In view of the foregoing difficulties, the voyage date was then postponed by mutual agreement of all the parties involved in the transaction until March 1, 1968.

4. On March 2, 1968, the GLADIATOR left Port Everglades with the two barges in tow. The ANDROS was dropped off in Savannah on March 4, 1968 and on March 5, the MARINER was brought into Charleston. While loading, the MARINER developed a list and could not leave immediately, so David Feldman dispatched the GLADIATOR back to Savannah to pick up the ANDROS and proceed to Kingston.

5. The towing agreement called for payment by David Feldman of a sum in advance to the tug owner upon the loading of the barges, but because of the MARINER'S difficulty in Charleston, Koppers International Co. did not pay him a portion of freight due and consequently he was unable to pay Nickerson Marine Towing Co. After the ANDROS had been picked up by the GLADIATOR in Savannah, Howard Nickerson, Sr. ordered the tug and barge into Port Everglades, arriving on March 12, 1968. He than refused to allow the voyage to continue until Feldman paid in advance and when the latter could not meet those demands, the crew of the tug was discharged. In the meanwhile, Sherwin Grossman had reluctantly agreed to wait for his company's charter hire, which also called for a sum in advance, until after the voyage had been completed and David Feldman received a partial payment from Koppers International Co. In view of the tug owner's refusal, arrangements were made to continue the tow with another tug but this arrangement fell through because Howard Nickerson, Sr. refused to surrender the papers and documents of the barge unless paid in advance. Both plaintiff and David Feldman were by now at the mercy of defendants.

6. On or about March 14, 1968, with pressure mounting, David Feldman persuaded Howard Nickerson, Sr. to allow resumption of the tow with the GLADIATOR. As consideration, he had to assign those funds that Koppers International Co. would pay upon delivery of the cargo in Kingston to Nickerson Marine Towing Co. It was orally agreed that out of these funds, defendants would collect the tug hire; pay Andros Marine Chartering Co. the accrued barge hire at the rate of $150.00 per day and return any excess to David Feldman. (Exhibit 18, pp. 19, 20, 21, 22 and 23). This agreement was admitted by Howard Nickerson, Sr., who only disputes the

---

3. The original JESSE JAMES contract called for a flat fee of $20,000.00 which represented an approximate daily rate of $1,400.00. Except for the reduction in rate and the substitution of tugs, the terms of the towing agreement remained in effect. Despite such acknowledgment by Howard Nickerson, Sr., the pleadings and evidence before the Court show that in the other lawsuit in Charleston, South Carolina, Nickerson Tug & Transit Co. is claiming the flat fee for the JESSE JAMES despite the fact that said tug never left drydock.

share claimed by Andros Marine Chartering Co. He contends that the barge's share was to be determined on the basis of a percentage of the charter rates for the tug and barge, rather than on the stipulated daily barge hire. The Court, after weighing the testimony of Sherwin Grossman, Lawrence Bicaise, Howard Nickerson, Sr. and that of David Feldman on this issue, finds that Feldman's assignment required Nickerson Marine Towing Co. to pay the daily charter hire on the barge ANDROS until her return to Florida. After this assignment occurred, David Feldman was practically eliminated from the picture. (Exhibit 18, p. 23).

7. The GLADIATOR, with the ANDROS in tow, left Port Everglades on March 16, and arrived in Kingston on March 21, 1968. Despite the assignment, David Feldman saw to it that the barge was promptly unloaded and made ready for the return trip to Port Everglades. However, due to numerous defects on the tug GLADIATOR which delayed the departure, Feldman left Kingston and had no further participation in the matter until some time thereafter. In the meanwhile, Howard Nickerson, Sr. had sent his son, Howard Nickerson, Jr., to Kingston to straighten things out and on March 25, the GLADIATOR and ANDROS, now empty, were dispatched by the latter to Port Everglades.

8. Prior to the departure from Kingston, at Port Everglades, in the morning of Saturday, the 23rd of March, Howard Nickerson, Sr. visited the offices of Andros Marine Chartering Co. for what he described during trial as a "social call". However, the purpose was that defendants had not yet received any of the money assigned by Feldman, who was nowhere to be found even though the cargo had been unloaded. After discussing the problem with Sherwin Grossman, in the presence of Jack Rogler, he stated, "to hell with Feldman, I will get the barge back". By this time, Sherwin Grossman was desperate because the ANDROS had been orally chartered to D. C. Savage, a subsidiary of Holiday Inns, for a period of six weeks and said charter was due to commence. Jack Rogler, D. C. Savage's representative, had gone to see Grossman that same morning to inquire about the barge ANDROS and to find out when he could get it. The Court finds that at this meeting, Howard Nickerson, Sr. agreed directly with Sherwin Grossman to return the ANDROS to Port Everglades by way of Mona Passage. It is quite clear that on this occasion Howard Nickerson, Sr. never indicated that the barge would be brought into San Juan, and it is also clear that Sherwin Grossman would never have consented to such deviation.

9. The ANDROS was brought into San Juan by the GLADIATOR, contrary to what Howard Nickerson, Sr. had promised Sherwin Grossman on Saturday, March 23, and contrary to the orders allegedly given to Howard Nickerson, Jr. by his father before dispatching the tug in Kingston (Exhibit C, pp. 4 and 6) on Saturday, March 23. The Court finds that such action by the defendants, was a breach of the aforesaid oral agreements.

Despite knowing of his father's promise and of Sherwin Grossman's urgent need for the barge, Howard Nickerson, Jr. tries to justify his action by saying that David Feldman ordered him to bring the barge into San Juan. This version is denied by David Feldman (Exhibit 18, pp. 31, 32, 34, 35 and 36). The Court, after weighing the conflict in testimony concludes that the version of events as recounted by Howard Nickerson, Jr. is not worthy of any credence. It is inconceivable that a tug owner would take further orders from a charterer whom he knows has reluctantly relinquished the barge, especially where he also knows that such an order is contrary to an agreement with barge owner. The least that should have been done under these circumstances, was to consult with the barge owner prior to submitting to the ex-charterer's alleged order. This was never done. Furthermore, pursuant to the towing agreement (Exhibit 20), Nickerson Marine Towing Co. was obligated to return the ANDROS to Port

Everglades. The charter between Andros Marine Chartering Co. and David Feldman was in the nature of a demise by which he became the owner *pro hac vice* of the ANDROS. The contract of towage entered into between Feldman and defendants would have been binding on plaintiff in respect to any claims against defendant, Bisso v. Inland Waterways Corp., 114 F.Supp. 713, 718 (E.D.La.1953);[4] *a fortiori*, such a contract would also be binding upon the defendants regarding their obligation of returning the barge to Port Everglades, Florida, and plaintiff, as barge owner, is entitled to the legal enforcement of the contractual terms negotiated by the *pro hac vice* owner.

In resolving the issue and conflict of testimony, the Court finds that Feldman did not order the barge into San Juan. Defendants were by now bound to plaintiff and it was from such principal that instructions could have been taken. On this issue the Court cannot believe the testimony either of Nickerson, Sr. or Jr.

Defendants were or should have been aware of the consequences that this act would produce and, therefore, are obligated to repair those losses resulting therefrom.

10. The Court finds that due to the defendants' negligence in towing from Kingston to San Juan, the hull of the ANDROS was severely damaged. [Ex-hibits 3(a) to 3(v)]. Howard Nickerson, Jr. and David Feldman, both of whom saw the barge in Kingston, testified that prior to departing that port, the barge was in good condition. Howard Nickerson, Sr. testified during trial that damages caused were covered by insurance. The insurer was represented at trial by separate counsel and the only defense raised was the necessity for and the reasonableness of the repair bills. No testimony or evidence was presented to contradict the testimony that repairs were necessary to make the barge seaworthy and that repair bills were reasonable.

The Court finds that in order to get the barge into a seaworthy condition for the return voyage, temporary repairs were made by Stateside Shipyard. The bill for these repairs amounted to $1,972.95, which amount, according to Frank Singleton, a representative of Stateside Shipyard, is fair and reasonable for such work in this area. [Exhibit (b)]. This work was only of a temporary nature in order to obtain Coast Guard permission for the return trip.

The Court also finds that when the barge eventually reached Florida, permanent repairs had to be made. The cost of these repairs, which the Court also finds to be reasonable, are as follows:

1. Port Everglades Shipyard (Exhibit 16, Sub-Exhibit 3) — $3,533.00
2. Port Everglades Shipyard (Exhibit 16, Sub-Exhibit 2) — 1,975.00
3. Pat Michael (Exhibit 17, Sub-Exhibit 1) — 972.00

The Court finds that the plaintiff is entitled to recover a total of $8,452.95 for the damage caused to the barge by defendant's negligence and for which damage the defendants had insurance.

11. After the ANDROS was brought into San Juan and abandoned, the plaintiff was compelled to make arrangements and pay for its return to Florida. Despite repeated demands and requests,

4. Conclusion of Law number 6. On appeal this case was affirmed, 211 F.2d 401, but then reversed by the Supreme Court, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911. However, conclusion number 6 was not involved or considered by the Court, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. but in passing over the validity of an exculpatory towage clause, the principle stated in conclusion number 6, was accepted by the higher courts.

defendants refused to return the barge. Because of the plaintiff's precarious financial position caused by defendant's actions, it was unable to raise funds to pay for the immediate return trip, despite great efforts by Sherwin Grossman and Larry Bicaise. Finally, Larry Bicaise succeeded in having the barge towed back to Florida on credit. However, in order to conclude such arrangements, he had to make a trip to Jacksonville, Florida, and another to San Juan, Puerto Rico. The expenses incurred by Larry Bicaise, for which defendants are liable, are as follows:

| | | | |
|---|---|---:|---:|
| 1. | Trip to Jacksonville | | $ 85.28 |
| 2. | Trip to Puerto Rico | | |
| | Miscellaneous Expenses | $50.00 | |
| | Parking in Miami | 4.42 | |
| | Hotel | 41.62 | |
| | Air Fare | 92.50 | 188.54 |
| | | | $273.82 |

The return trip had to be in stages. First, the barge was towed from San Juan to Punta Borinquen by the tug WESTERN CITIES, where she was met by the tug J. K. BURNETTE, which in turn took the barge to the entrance to Port Everglades, where the tug ESCORT finally brought her home. The services of the WESTERN CITIES, owned by Caribtow Corporation, amounted to $770.00; those of the J. K. BURNETTE, owned by White Stacking Towing Co., amounted to $3,500.00; and those of the tug ESCORT, amounted to $250.00 (Exhibits 12, 13 and 14).

The Court finds that defendants had agreed by contract and orally to return the barge and that notwithstanding plaintiff's demands they failed to return the same, therefore, they are liable for the sum of $4,793.82, paid by plaintiff to get the work done which defendants should have done, but failed to do.

12. The Court finds that as a result of the involuntary entry into the harbor of San Juan, the ANDROS became liable for harbor dues and wharfage to the Puerto Rico Ports Authority. According to the testimony of the Port Authority's comptroller, the total amount owed as of the date of the trial was $1,977.58, with legal interest continuing to accrue until those charges are fully paid. Since the only reason for the barge to be in the Port of San Juan was because of defendants' breach and their unjustified refusal to return the same, they must bear such expenses as was by them occasioned. Sherwin Grossman and Larry Bicaise have testified that plaintiff is liable for these expenses and, consequently, the Court finds that such charges should be paid by defendants. Defendants must also pay interest accrued since the day of trial.

13. The Court further finds that the defendants received from Koppers International Co., the sum of $14,790.00, which included the hire on the ANDROS until her return to Florida. Had the barge been returned directly instead of being diverted to San Juan, she would have arrived on or about the 29th of March. The hire for such period, commencing on the 1st of March, at the rate of $150.00 per day, amounts to $4,350.00. The Court concludes that this amount is being unlawfully withheld by Nickerson Marine Towing Co. since March 29, 1968, when it became due and payable. The Court awards plaintiff the sum of $4,-

350.00, plus legal interest on this amount from March 29, 1968.

14. The Court further finds that as a result of the deviation, the plaintiff lost the charter to D. C. Savage. This charter was at the rate of $150.00 per day, which is the usual rate charged for the use of the ANDROS. The Court finds that $150.00 is the reasonable daily charter hire for a barge of such class. Had the barge been returned to Florida on time, the plaintiff would have earned $6,300.00. Defendants are liable for this loss.

The plaintiff was unable to use the barge ANDROS from March 30, 1968 until October 30, 1968, the day she returned to Port Everglades, or a total of 215 days. Plaintiff is claiming to have suffered a loss of charter hire amounting to $32,250.00, but such claim presupposes that the barge would have been chartered all that time. However, the evidence before the Court is inconclusive as to any other charter after the end of the six week charter to D. C. Savage. Although Jack Rogler testified that the charter on the ANDROS would probably be extended beyond the original six weeks he said there was no contractual obligation to do so at the time. Such testimony is therefore insufficient to support a finding that the barge would have been chartered for a longer period. For this reason, the award for loss of charter hire must be limited to six weeks.

15. The plaintiffs did not just cross their arms and allow charter hire to accumulate. Larry Bicaise and Sherwin Grossman did everything possible to raise the funds for the return trip, but were unsuccessful. Sherwin Grossman attempted to get funds from the mortgagee and from other banks. Larry Bicaise was looking for ways of getting the barge back or putting her to work while in San Juan. In order to mitigate losses, the barge was chartered for one week in July 1968, to Marine Trading Corp. The Court finds that the plaintiff acted with the utmost diligence in attempting to mitigate losses.

16. In laboring to get the barge returned and at Howard Nickerson's, Sr. request, the plaintiff arranged for a crew to come to Puerto Rico to man the GLADIATOR for a trip to Florida. The crew was requested because at the time, defendants San Juan operation was on strike. The crew came to San Juan but was never used as the tug was sold to another company.[5] Since the plaintiff had arranged for such crew, it is now being asked to pay for those expenses, amounting to $949.35 and which defendants, although primarily liable, have refused to pay. Defendants are liable and must pay for this amount.

17. The total damage, expenses and loss suffered by plaintiff amount to $26,823.70, without including accrued interest on claims where allowed. (Findings of Fact 12 and 13).

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and subject matter.

2. The defendants and plaintiff entered into an oral agreement by which defendants promised to return the barge ANDROS from Kingston, Jamaica to Port Everglades, Florida; and to pay plaintiff from funds that had been assigned by the charterer, the daily charter hire due until the time of delivery to her owners (plaintiff).

3. The defendants breached the aforesaid oral agreement and instead diverted the barge into San Juan, Puerto Rico.

4. The defendants further breached the aforesaid oral agreement by refusing to return the barge to her owners.

5. The defendants further breached the aforesaid oral agreement by converting to their own use and refusing to

5. Defendants' assets were sold to McAllister Brothers, Inc., shortly after the GLADIATOR arrived in San Juan.

pay plaintiff the accrued charter hire after due demand had been made, even though it had received that money.

6. The defendants have converted to their own use the earned charter hire of the barge ANDROS up to March 29, 1968.

7. The defendants and the charterer of the barge had also entered into a contract by which defendants were obligated to return the barge ANDROS to Port Everglades, Florida.

8. Under the aforesaid contract, the defendants are also liable to the owner (plaintiff) for the return of the chartered barge. Bisso v. Inland Waterways Corp., 114 F.Supp. 713, 718 (E.D.La. 1953).

9. The defendants, by willfully refusing to return the barge to Port Everglades, Florida, have breached the aforesaid contract and obligation.

10. Defendants' refusal to return the barge ANDROS has caused damages, expenses and losses to the plaintiff, which must be repaired.

11. Defendants are liable for those damages and losses resulting from the failure to perform contractual and legal obligations and, consequently, must repair all the damages and losses caused by such breach.

12. The plaintiff acted with the utmost diligence in attempting to mitigate losses.

13. The defendants were negligent in towing the barge ANDROS from Kingston to San Juan, as a result of which the barge was damaged and made unseaworthy.

14. Since the barge had no damages and was in a seaworthy condition before departing Kingston, the defendants and its insurer are liable for the expenses incurred by plaintiff in repairing those damages.

15. The plaintiff is entitled to recover from the defendant those damages and losses found by the Court in the Findings of Fact No. 17, amounting to $26,823.70.

16. In the instant case the defendants were callous in their attitude, refusing to accede to plaintiff's plea for the return of the barge or to the payment of money that was unquestionably owed. As a result of that recalcitrance, the plaintiff was forced to hire a lawyer and go to the Court to get what was plainly owed to it. It is difficult to imagine a clearer case of damages suffered for failure to perform obligations. In the exercise of its equity powers, this Court will award counsel fees in the sum of $1,000.00. Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 999, 8 L.Ed.2d 88; The Apollon, 9 Wheat. 362, 379, 6 L.Ed. 111.

## ORDER

On the morning of April 14, 1969, the day when trial was to commence, defendants moved to have this action dismissed or in the alternative to have it transferred under the provisions of 28 U.S.C.A. § 1404 to the District Court of South Carolina, Charleston Division, and there to be consolidated with Civil No. 68–306, Nickerson Tug & Transit Co. v. David Feldman. In support defendants allege that David Feldman is an indispensable party to this action because in the Charleston action he is asserting the same claims against Nickerson Tug & Transit Co. as the plaintiff is asserting against defendants in this action. They further allege that the plaintiff in the Charleston action, although a different corporation, is the same entity as the defendant corporations in this case and therefore, they fear the possibility of double recovery. They further argue that because the Court in Charleston has before it all of the parties and issues and because "Feldman is a necessary and indispensable party to this litigation"; that Court is the better forum to do justice to all the parties.

The request for dismissal is hereby denied inasmuch as defendants ad-

mitted in their amended answer the jurisdiction of this Court and they have failed to advance any other grounds for dismissing the complaint. The absence of David Feldman does not warrant a dismissal, especially where no evidence has been presented to convince the Court that he is a necessary and indispensable party. Even if he were to be labeled as such, for reasons hereafter stated, this Court cannot dismiss. Thus, the only question to be considered is the motion for transfer, which requires a review of the procedural developments.

The first action filed is the one before this Court. It was filed on April 11, 1968 by plaintiff against the tug GLADIATOR, Nickerson Marine Towing Co. and Port San Juan Towing Co. Four days thereafter, on April 15, 1968, Nickerson Tug & Transit, which according to defendants is the same as the corporate defendants in San Juan, for unknown reasons, filed suit against David Feldman in Charleston, South Carolina. (Civil No. 68–306). Feldman appeared in that jurisdiction to defend although he was then living in Puerto Rico and probably not subject ot the jurisdiction of that Court.

Why defendants chose Charleston as the forum in which to sue Feldman defies the imagination because at that time they could have brought an action against him in Puerto Rico or could have impleaded him in this same action, pursuant to Rule 14 of the Federal Rules of Civil Procedure. At that time, procedural means were available by which defendants could have avoided being exposed to what they call "double recovery" as a result of Feldman's absence. If he was really a "necessary and indispensable party to the litigation", a separate action should have been filed in this Court and then consolidated with this case, or an impleading petition under Rule 14 should have been made. Had any of those two means been used, all of the so-called "indispensable parties"

would now be before the same court. But, by having a subsidiary or affiliate corporation initiate judicial proceedings in South Carolina, the defendants have *motu propio* foreclosed the possibility of having all the parties before the same forum. After these initial procedural steps, almost a year elapses before the defendants become preoccupied about the situation.

It is the opinion of this Court that defendants' motion was untimely. Pursuant to 28 U.S.C.A. § 1406(b), "nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue"; and the record clearly shows that no such "timely" or "sufficient" objection was interposed. Unlike matters of jurisdiction, venue is a privilege personal to a defendant, which can be waived and is waived by defendant unless timely objection is interposed. 1 Moore's Federal Practice, ¶ 0.146[6] p. 1911.

No such defense was ever asserted here until the morning of trial, nor was it alleged in the Answer or the Amended Answer, which by the way, was filed more than one month before the day set for trial.

An Admiralty Court, being vested with equity powers, must weigh the respective equities of the controversy. Timeliness of a motion such as this is crucial, especially, where like here, the trial is ready to proceed, the parties, witnesses and counsel have come from Florida and South Carolina, expenses have been incurred and the case has been set for trial for more than one month.

Defendants voluntarily went to South Carolina to sue a party which was subject to the jurisdiction of this Court; thus setting up the stage for their present difficulties. A whole year is allowed to transpire before they do anything to remedy the situation. The eve of trial

is not the proper time to file such a motion and on the basis of this tardiness alone, the Court has ample grounds to deny the motion.

■■ On the merits, the motion must also be denied. In the first place, defendants have not shown, other than by a mere allegation, why David Feldman is an indispensable party to this action. If he were, defendants should have impleaded him under Rule 14 or should have petitioned the District Court in South Carolina for a transfer of Civil No. 68–306 to this forum. Neither available remedy was ever sought by defendants. The mere possibility of double recovery by itself is insufficient to warrant a transfer to another forum.

Secondly, if the District Court of South Carolina had jurisdiction over the parties and subject matter in this action, then this Court could properly entertain a petition for removal. However, such is not the case at bar because the Charleston District Court could never have acquired jurisdiction over the tug GLADIATOR. Because of the nature of an *in rem* proceeding, it is obvious that the GLADIATOR was not subject to the jurisdiction of that Court. Furthermore, it is doubtful that *in personam* jurisdiction in that forum could have been acquired over the two corporate defendants, one of which is a Florida corporation and the other a Puerto Rican corporation. That these defendants are now willing to waive their statutory defenses as to venue and jurisdiction over their persons, cannot retroactively vest the transferee forum with jurisdiction.

■ In conclusion, even assuming that plaintiff were willing to consent to the transfer which it has not, this Court could not transfer to a court which lacked jurisdiction at the time the actions were commenced. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254.

In view of the foregoing, defendants' motions are hereby denied.