**TENNECO OIL CO.**

v.

**TUG TONY, Her Engines, Tackle, Apparel, etc., In Rem, and Coastal Towing Corp., Her Owners, and/or Operator, In Personam.**

**Civ. A. No. 69-H-716.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 11, 1971.

W. Garney Griggs, Ross, Griggs & Harrison, Houston, Tex., for plaintiff.

Robert C. Davee, Eastham, Watson, Dale & Forney, Houston, Tex., and Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant.

## MEMORANDUM AND ORDER

BUE, District Judge.

This suit involves the validity of a cargo insurance clause in a contract of affreightment, wherein all rights of subrogation against the carrier have been waived by the assured, the cargo owner, pursuant to the written agreement of cargo underwriters as contained in the provisions of the cargo insurance policy.

The facts have been stipulated and agreed to by the parties. Tenneco, owner of a quantity of O. W. Ward Condensate, entered into a written charter party with the defendant, Coastal Towing Corp. on December 18, 1967, providing for the transportation of approximately 50,000 barrels of such Condensate from Brownsville, Texas to Chalmette, Louisiana. The Condensate, a form of crude petroleum, was loaded by Tenneco into unmanned steel tank barges, designated as NBC–903, NBC–980 and CT–829, and the barges were taken in tow by Coastal steel diesel tug TONY. On January 4, 1968, Coastal negligently caused the barge NBC–980, while in tow of the TONY, to collide with a protection structure around a fresh water intake system in the Mississippi River, causing a fracture in one or more of the tanks of the barge. Coastal admits that the collision resulted in the loss of 2,063 barrels of cargo from the No. 2 port tank of the barge NBC–980 having an agreed value of $6,845.38. Plaintiff alleges that the total loss of petroleum cargo amounted to 3,259.76 barrels, having a total value of $11,453.17.

The charter party in question contained the following insurance clause pursuant to which Tenneco obtained a policy of cargo insurance:

INSURANCE: Hull and P & I coverage shall be carried with first class underwriters by Owners for Owner's account. Cargo insurance shall be procured by the charterer for the account of and at the expense of the

charterer and owner of the cargo, and all rights of subrogation shall be waived by the cargo insurance against all equipment and owners and operators thereof.

On August 1, 1967, prior to execution of the charter party, Tenneco had been issued "marine open end insurance policy" No. W–101 by Continental Insurance Company through Marine Office-Appleton & Cox Corp. and/or John L. Wortham & Son, in the amount of $2,000,000. Tenneco was thereby ostensibly insured against loss of or damage to its cargo, and the premium was fixed in accordance with the amount of cargo transported during the period of the policy. The policy further granted authorization to Tenneco to waive the underwriter's subrogation rights against parties with whom Tenneco had working agreements in the following language which is set forth in Answer No. 5 of Defendant's Answers to Interrogatories:

> Privilege is granted the assured hereunder to waive subrogation prior to a loss against parties with whom the assured has a working agreement.

Subsequent to the aforementioned collision and loss of cargo, Tenneco made claim against the underwriter on the insurance policy and was paid $6,845.38 of the total alleged loss of $11,453.17. The situation as to the remaining alleged loss of cargo in the amount of $4,607.79 is not clear from the proof, but the briefs of counsel shed some light on the matter. While it is suggested by Coastal that Tenneco either did not make a claim on its underwriter for this additional loss or the underwriter refused payment, (Defendant's brief p. 3), Tenneco recites that it did file a claim with underwriters for the full amount, but was paid only $6,845.38 pursuant to the terms and conditions of their cargo (insurance) policy. (Plaintiff's brief p. 4). Coastal views this aspect as immaterial to the determination of its motion for summary judgment, whereas Tenneco urges its materiality, at least alternatively, in support of its motion for summary judgment.

The issues precipitating cross motions for summary judgment boil down basically to these: Tenneco brings this suit against Coastal and the tug TONY to recover for the full amount of the alleged loss or $11,453.17. Tenneco contends that, regardless of whether the charter party is construed as a contract of towage or a contract of affreightment, towboat operators such as Coastal should be liable for damages admittedly resulting from their own negligence. In other words, it is urged that the insurance clause in the charter party is wholly invalid on grounds of public policy. Alternatively, Tenneco contends that Coastal is insulated from liability only as to the amount paid by underwriters to cargo pursuant to the terms and conditions of the cargo insurance policy ($6,845.38) and that Coastal is exposed to liability and a suit by cargo for the balance of the alleged loss ($4,607.79).

Coastal, on the other hand, contends that in instances in which the cargo owner and the carrier have entered into a private charter party which provides for the cargo owner to obtain cargo insurance at its expense and to obtain waiver of cargo underwriter's right of subrogation against the carrier, all of which was done, the underwriter cannot subrogate against the carrier for the sums which it has paid to its assured, the cargo owner. Furthermore, as to the present suit to recover damages in the amount of $11,453.17 which includes the claim of $4,607.79 that the cargo underwriter for unexplained reasons has not seen fit to honor, Coastal takes a firm position: there can be no distinction between the subrogated claim asserted by the cargo underwriter and any claim asserted by Tenneco. Both stand on the same footing, and the insurance clause in the charter party forms a defense to both. In short, it is urged that the insurance clause in the charter party either affords the carrier a complete defense, or it is invalid in its entirety. These contentions will be treated seriatim.

■ Tenneco submits that the insurance clause in the charter party is wholly invalid as a matter of public policy, since liability for negligence or careless accident should not be avoided by contract. Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955); Dixilyn Drilling Corp. v. Crescent Towing Co., 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963). In *Bisso, supra,* Mr. Justice Black reiterated a long standing judicial rule, based on public policy, invalidating towage contracts releasing towers from all liability for their negligence. 349 U.S. at 90, 75 S.Ct. 629. Compania de Navegacion Interior, S.A. v. Firemens Fund Insurance Co., (The Wash Gray), 277 U.S. 66, 48 S.Ct. 459, 72 L.Ed. 787 (1928); The Steamboat SYRACUSE, 79 U.S. (12 Wall.) 167, 20 L.Ed. 382 (1871). This rule, he reasoned, acted "(1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have power to drive hard bargains." 349 U.S. at 91, 75 S.Ct. at 632. The *Bisso* rule was reaffirmed in *Dixilyn, supra.* There, the Supreme Court reversed a decision by the Court of Appeals for the Fifth Circuit, holding that a clause in the towage contract which released the tower from liability for his own negligence was invalid as against public policy.

While it is certainly true that the *Bisso* rule has been applied in a variety of factual situations, *e. g.,* D. R. Kincaid, Ltd. v. Trans-Pacific Towing Inc., 367 F.2d 857 (9th Cir. 1966); California Co. v. Jumonville, 327 F.2d 988 (5th Cir. 1964); Andros Marine Chartering Co. v. Tug GLADIATOR, 307 F.Supp. 17 (D.P.R.1969); Illinois Central R. R. Co. v. Standard Oil Co., 292 F.Supp. 337 (S. D.Miss.), aff'd 403 F.2d 1022 (5th Cir. 1968), Tenneco's reliance upon *Bisso* and *Dixilyn* in the instant case is misplaced. Towage contracts which provide for a release from liability have been consistently distinguished from contracts of affreightment and charters which include insurance clauses and the waiver of subrogation rights. *E. g.,* Allied Chemical Corp. v. Gulf Atlantic Towing Co., 244 F.Supp. 2 (E.D.Va. 1964); Pure Oil Co. v. M/V CARRIBEAN, 235 F.Supp. 299 (W.D.La.1964), aff'd sub nom., Pure Oil Co. v. Boyne, 370 F.2d 121 (5th Cir. 1966). In *Pure Oil* the District Court distinguished the rule in *Bisso,* holding it inapplicable to the relationship of private carrier to shipper "where the carrier alone controls the entire means of transportation, whether a single vessel or tug and tow." 235 F.Supp. at 305; Texas Company v. Lea River Lines, 206 F.2d 55, 57 (3d Cir. 1963). Public policy does not require the invalidation of all or part of a contract which expressly places the economic burden of providing insurance upon one or the other of such parties.

The distinction between contracts of towage and affreightment is not arbitrary. Conceivably, the *Bisso* rule would apply even to contracts of affreightment if it was found that such contracts which relieved the carrier from liability for its own negligence were dictated by "a monopolistic power" or were the products of overreaching. Hercules Powder Co. v. Commercial Transport Corp., 270 F.Supp. 676, 681 (N.D.Ill.1967); Steuber & Co. v. Rebel Towing Co., Docket No. 66-H-33 (unreported opinion by Judge Allen B. Hannay, case decided April 8, 1970, by Judge Ben C. Connally). There are no allegations as to overreaching in this case, nor is there any apparent reason for considering the impact of public policy. Based on the available proof, the *Bisso* rule, therefore, would appear to have no application to this situation.

■ The alternative position of Tenneco and the position of Coastal are not so readily resolved. In fact, I have serious reservations at this stage in the development of the case that summary judgment is appropriate for either party. Certainly, as to that amount of the cargo damage for which Tenneco was reimbursed by its insurer, the contract of affreightment sets out the intentions of the parties. According to its provi-

sions the charterer was to secure cargo insurance, bear the expense of that policy, and procure a waiver of subrogation rights of the cargo underwriter against all equipment and owners and operators thereof. This was accomplished by cargo, and it was subsequently reimbursed by its cargo underwriter in the amount of $6,845.38. As to that amount of damages, the provisions of the charter party and the cargo insurance policy are clear: all rights of subrogation against Coastal were waived by the cargo underwriter. Furthermore, Tenneco could not assert such a claim against Coastal, as it had already been reimbursed. To do so would amount to an attempt to effect a double recovery. Thus, the charter party controls as between Tenneco and Coastal with reference to the amount paid by underwriters to cargo. Additionally, there is no contention or clear cut indication based upon the present theories urged by the litigants that either party has breached its contractual obligations thereunder.

■ There remains the question as to Coastal's liability, if any, for the amount of the cargo loss alleged by Tenneco for which it made claim against underwriters under the cargo policy and for which no reimbursement was allowed. It is this somewhat unusual situation which distinguishes this case from those cited above. The insurance clause in the charter party contains no recitation as to any liability for damages over and above those covered by the policy. Inasmuch as there was no reimbursement to cargo by its insurer of the $4,607.79 in claimed damages, it can only be assumed at this stage that the damages were not adequately demonstrated or that for some reason they were not covered by insurance. Both involve potential fact issues for determination. If it is the former, then Tenneco could not prevail anyway in a suit on the merits against Coastal. If it is the latter, then the question arises as to what legal right Tenneco has to sue Coastal for $4,607.79 in damages, either under the charter party or separate and apart from its provisions.

Contrary to the position of Coastal, it would not appear that the cargo underwriter could be viewed as a party at interest in the prosecution of this suit, since its interest would be solely one of subrogation. Such a legal right arises only subsequent to its acceptance of the claim and reimbursement of the assured, and this right was specifically waived under the provisions of the policy. Apart from waiver, the right of subrogation does not enter into a consideration of the claim of $4,607.79, since the insurer did not see fit to honor or pay it. Thus, the present posture of the suit, admittedly not entirely clear from the proof as distinguished from assertions in the briefs, would indicate that Tenneco prosecutes it only on its own behalf. If Coastal is correct in its views as to cargo underwriter's involvement, then the legal basis for its participation in the litigation should be revealed. Furthermore, it is not clear on what basis Tenneco would be entitled to recover $6,845.38, an amount covering claimed damage for which it has presumably been reimbursed.

As to Tenneco's legal right to pursue Coastal for damages not reimbursible under the cargo policy and therefore denied by the insurer, it proceeds on a negligence theory and sees no prohibition to such a course contained within the charter party. Both parties allude solely to the insurance clause as relevant to this dispute, and its provisions only recite, in substance, that the charterer upon the placement of cargo insurance obtain a waiver of subrogation from the insurer. The waiver was obtained, but the insurance coverage picture remains obscure. It is not for this Court to frame legal theories for litigants or to determine at this stage whether the charter party in toto contains or lacks the necessary provisions to preclude Tenneco's action against Coastal. Nor is it within the Court's province in considering summary judgment on this record at this time to assume unquali-

fiedly that both parties have fully complied with their contractual obligations under the charter party. Additional proof may well demonstrate that Tenneco breached its charter party responsibility to insure all of the cargo in which case the rationale of Calcasieu Chemical Corp. v. Canal Barge Co., Inc., 1968 A. M.C. 1618 (N.D.Ill.1968), aff'd, 404 F.2d 1227 (7th Cir. 1969), could be applicable.

Inasmuch as it cannot be satisfactorily concluded at this time that there remain no genuine issues as to material facts in this suit, both the plaintiff's and the defendant's Motion for Summary Judgment will be denied as premature with leave granted to either or both parties to re-urge such motions, if appropriate, at a subsequent point in the development of the litigation. This will constitute the Memorandum and Order of the Court. Clerk will notify counsel.