**HERSHEY CHOCOLATE CORPORA-
TION and A. C. Israel Commod-
ity Co., Inc.**

**v.**

**THE MARS, her engines, boilers, ma-
chinery, etc. and all persons having any
interest therein, and Westfal-Larsen &
Co. A/S and A/S J. Ludwig Mowinckels
Rederi, trading as Southern Cross Line,
her owners.**

No. 207 of 1955.

United States District Court
E. D. Pennsylvania.

April 17, 1959.

Springer H. Moore, Jr., Krusen, Evans
& Shaw, Philadelphia, Pa., for libellants.

Harrison G. Kildare, Rawle & Hender-
son, Philadelphia, Pa., for respondents.

EGAN, District Judge.

Libellants were the respective con-
signees and owners of a cargo of cocoa
beans shipped from Ilheos, Brazil, to
Philadelphia, Pennsylvania, aboard the
respondents' steamship Mars. The
beans, packed in large burlap bags, were
received and loaded in good condition.
When they arrived in Philadelphia, there
was a shortage in weight because some of
the bags were torn in the process of un-
loading and there was a degeneration or
spoilage of the contents of other bags
because of a lack of ventilation during
the voyage.

Suit was instituted to recover for
this damage. Libellants each contend
that the spoilage was caused by excessive
moisture or ship sweat, which resulted
from inadequate ventilation, and that
part of the loss was caused by the use of
hooks and other mishandling by long-
shoremen during the unloading which
caused the bags to tear and brought
about a loss or slackage of weight.

When the Mars left Brazil, the weather
was good. The sailing was smooth and
the prevailing temperatures were rela-
tively constant. Beginning on January
15, 1955, the Mars encountered stormy
seas and rough weather, accompanied by
an abrupt drop in temperatures. To pre-
vent the entrance of sea water and rain

into the hold, the ventilation system of the Mars was covered over and cut off from January 15 to January 21, except for a short time on January 19, 1955.

During the period January 18 to January 21, the temperature took a sharp drop from 21° centigrade to 0°. Cocoa beans normally generate and give off heat and the sharp decline in temperature caused condensation commonly called sweat. As indicated, the sweating was caused by the 21° drop in temperature in the period noted and this, coupled with the absence of ventilation and the internal heat generated by the beans, brought about the spoilage.

Libellants produced an expert witness in the person of Captain Quistgaard who testified that the Mars could have avoided the bad weather which necessitated the shutting off of the ventilation with the consequent sweating, by pursuing another course. He testified that the Mars sailed right through the center of the storm instead of sailing around it. He testified that he considered the course taken by the Mars as an exhibition of bad seamanship. Thus he testified (p. 157):

"I would go around the bad weather where it would not be necessary to cover the ventilation—to cover the ventilation for any length of time."

Upon being questioned by the Court, the witness stated (p. 171):

"The Court: Captain Quistgaard, may I ask you one more question? As I gather from your testimony, your conclusion is that there was poor seamanship here, rather than anything else that caused this damage?

"The Witness: Yes, sir.

"The Court: That is all.

"Mr. Kildare: Would that have anything to do with the stowage of the cargo, or are we dealing with the poor seamanship with reference to just this particular choice of course, or what are you talking about? What brought about the damage here, in your opinion?

"The Witness: Heading right into the storm and thereby having to shut off his ventilation for six days."

The rights of the parties herein are governed by the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. Section 1304(2)(a) reads:

"Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—

"(a) Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship."

It becomes clear from the libellants' own testimony that the master could have avoided the severe weather which, with the accompanying circumstances, brought about the spoilage, if he had changed his course and sailed around the storm instead of heading into it. Under the circumstances, an error in management and navigation does not impose liability. On the contrary, it exonerates it.

Therefore, the Court finds for the respondents with respect to the several claims of damage of both libellants for spoilage.

■ With respect to the shortage or slackage, the respondents answer the allegations of libellants by saying that the bags were torn because they were in a rotted or weakened condition, caused by the presence of excessive moisture, and that all the damage is attributable to moisture and not mishandling.

Libellants established by credible evidence that the bags were torn from (1) the use of hooks, (2) contact with exposed structural members of the ship, and (3) from dragging along the dock, and that this type of damage was distinguishable from the bags that were torn as a result of heaving wetting.

The Court finds that the use of hooks is clearly improper and that there was dragging of the bags along the dock and that the cargo was exposed in places to structural members of the ship with consequent damage.

Therefore, the Court finds that the respondents are liable to each of the libellants for the damage resulting from the shortage or slackage thus caused.

Accordingly, the Court finds for libellant, Hershey Chocolate Corporation, and against the respondent, steamship Mars, her engines, boilers, machinery, etc. and all persons having any interest therein, and Westfal-Larsen & Co. A/S and A/S J. Ludwig Mowinckels Rederi, trading as Southern Cross Line, her owners, for loss due to slackage in the sum of $1,864.46 [1] and the Court finds for libellant, Israel Commodity Co., Inc. and against the respondents, steamship Mars, her engines, boilers, machinery, etc. and all persons having any interest therein, and Westfal-Larsen & Co. A/S and A/S J. Ludwig Mowinckels Rederi, trading as Southern Cross Line, her owners, for loss due to slackage in the sum of $604.50.

This opinion constitutes the Court's findings of fact and conclusions of law. Rule 46½, 28 U.S.C.A.

Counsel will submit an appropriate form of Order.

[1]. The parties agreed upon the amount of damages as follows:
Hershey claim — Slackage: $1,864.46
Spoilage: $6,783.91
Israel claim: Slackage: $ 604.50
Spoilage: $3,654.97