CONTINENTAL FOOD PRODUCTS, INC., a Florida Corporation, Plaintiff-Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation, Defendant-Appellee.

A. J. CUNNINGHAM PACKING CORPORATION, a Massachusetts Corporation, Plaintiff-Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation, Defendant-Appellee.

No. 75–2188.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1977.

eration. Wignall found the refrigeration machinery of the vessel in good condition, found the meat to be sound and hard frozen in temperatures below freezing. The cargo was discharged from the vessel on January 24, 1972. On January 26, 1972, the Department of Agriculture announced a hold for an unspecified reason. Continental Foods was notified of the hold order and on February 10, 1972 its president arrived in Tampa. At that time he observed that wet packages had been refrozen and blood stains appeared on the cartons. These conditions were consistent with the fact that the meat had thawed. The Department of Agriculture would not allow the meat to enter the country. The entire shipment had to be repackaged and a portion was ultimately rejected.

There is no evidence of stranding, sinking, burning or collision. There is no evidence of refrigeration breakdown, derangement or stoppage in excess of 24 hours. There is no evidence of a cause of loss which would render applicable the Shore Clause. The damages claimed by Continental ($20,000) and Cunningham ($80,000) consists of: (1) cost of recoopering the meat; (2) extra storage; (3) the diminished value of the meat; and (4) cost of the meat ultimately rejected.

The policies provide in part as follows:
"GOODS INSURED 3,
To attach upon all shipments of lawful goods and/or merchandise consisting principally of frozen meat.

\* \* \* \* \* \*

VOYAGES COVERED 7.
At and from ports and/or places in the World to ports and/or places in the United States.

\* \* \* \* \* \*

AVERAGE TERMS 12(b).
EXCEPT WHILE SUBJECT TO 'ON DECK' BILL OF LADING:—*Frozen beef in 60 pound cartons with metal straps is insured :—*
Warranted free from Particular Average unless the vessel or craft be stranded,

F. Lawrence Matthews, Fort Lauderdale, Fla., for plaintiffs-appellants.

Ronald R. Parent, Miami, Fla., for defendant-appellee.

Before MORGAN and GEE, Circuit Judges, and HUNTER, District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Appellants shipped frozen meat from Guatemala across the Caribbean Sea to Tampa, Florida. There was substantial damage. The cause of the damage was, and remains, unknown. Coverage under the "cargo" marine insurance policies was denied and that denial was sustained by the trial court.

We need but briefly discuss the facts: Defendant, Insurance Company of North America, issued open marine cargo policies to Continental Foods and Cunningham Packing. Both policies were in full force and effect and, as relevant to the issues here, were identical. Each insured had arranged for the shipment of meat aboard the M/V "ATLAN DIAMANTE." The ship arrived at Tampa on January 21, 1972. Upon arrival, surveyor David Wignall inspected the plaintiffs' cargo and the vessel's refrig-

sunk or burnt, but notwithstanding this warranty these Assurers are to pay any loss of or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress, and to include loss of an entire shipping package due to theft.

It is, however, agreed that only while stowed in refrigeration compartments of overseas vessels and/or in transit in refrigerated containers this insurance is extended to cover loss, damage or deterioration due to, or caused by, derangement, breakdown, or stoppage of refrigerating machinery and/or refrigerating plan and/or insulation, provided such derangement, breakdown, or stoppage continues for not less than 24 consecutive hours. Warranted by the Assured that the interest insured hereunder is in sound condition at the time of commencement of risk hereunder."

■ Appellants have never asserted in their pleadings or proof or argument that they knew how the thawing occurred. This is acknowledged by the appellees, who also presented no proof of the cause of the loss. The burden of proving a loss by a peril insured against on a cargo policy is on the insured. *S. Felicione & Sons Fish Co. v. Citizens Casualty Co. of N. Y.,* 430 F.2d 136 (5th Cir. 1970); *Northwestern Mutual Life Insurance Company v. Linard,* 498 F.2d 556 (2nd Cir. 1974). Counsel for appellants do not dispute this proposition of law but urge a variety of arguments, not without ingenuity, which add up to a call upon us to replace it by a rule requiring that the insurer prove that the loss did not arise from a covered peril. The argument is based on a premise that a presumption exists in favor of coverage on a marine "perils" hull policy and that this same presumption should exist in favor of an insured under a marine "perils" cargo policy. We find no basis either in authority or principle to support this analogy. The contrary rule is well established and it would create needless confusion were this court to deviate from it. The trial court was eminently correct in concluding that plaintiffs failed to sustain their burden of proving a loss caused by a peril insured against.

■ Then, too, the term "warranted free from particular average" found in clause 12(b), supra, is traditionally inserted in marine cargo insurance policies to exclude partial losses due to the nature of the goods. Gilmore and Black define the purpose of such a warranty-free-from-particular-average clause: "to disembarrass the underwriter of claims * * * considered normally expectable, given the character of the commodity." § 2–13 at 82. "Warranted Free of Particular Average" exempts underwriters from liability for all partial losses except as otherwise provided by the policy, *Larsen v. Insurance Company of North America,* 252 F.Supp. 458 (W.D.Wash.1965), aff'd 362 F.2d 261 (9th Cir. 1966), and limits the insurance to actual total loss by excluding from coverage any partial loss. *J. A. Jones Construction Co. v. Niagara Fire Insurance Co.,* 170 F.2d 667 (4th Cir. 1948).

The insurance contract contains a partial loss clause:

"It is, however, agreed that only while stowed in refrigeration compartments of overseas vessels and/or in transit in refrigerated containers this insurance is extended to cover loss, damage or deterioration due to, or caused by, derangement, breakdown, or stoppage of refrigerating machinery and/or refrigerating plant and/or insulation, provided such derangement, breakdown or stoppage continues for not less than 24 consecutive hours."

But once again, the insured had the burden of proving that the thawing was occasioned by the particular exception—a breakdown of the refrigerating machinery for a period of more than 24 hours. There is no evidence to sustain that burden.

■ Appellants argue that the "sue and labor clause"—

"In the case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants

and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or this Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment; to the charges whereof, this Company will contribute according to the rate and quantity of the sum herein insured"—

affords coverage for certain items of the alleged damage. The fallacy of this argument is that it ignores completely the history, function and purpose of the "sue and labor clause." *Reliance Insurance Co. v. THE ESCAPADE,* 280 F.2d 482 (5th Cir. 1962).[1] This clause is tied irrevocably to the insured perils coverage. Because the purpose of the clause is to reimburse the assured for expenses incurred in satisfying his duty to the underwriter, there is no such duty where the policy, for one reason or another, does not afford coverage. The "sue and labor" clause does not operate as enlargement of the perils underwritten against.

There is no merit to plaintiffs' argument that they did not receive a fair hearing below, nor does the fact that the insurer's counsel prepared the findings of fact and conclusions of law suggest a reason for reversal under the circumstances of this case. Cunningham insists that the trial court erred in not admitting certain business records essential to establishing the extent of Cunningham's damage. Because plaintiffs have not carried their burden of proving that their losses were covered under the policy, the extent of the damages becomes irrelevant.

The judgment of the district court is AFFIRMED.

1. In a capsule, that may be briefly stated. Since an assured has the duty toward his underwriter to exercise the care of a prudent uninsured owner to protect insured property in order to minimize or prevent the loss from the occurrence for which the underwriter would be liable under the policy, the clause undertakes

to reimburse the assured for these expenditures which are made primarily for the benefit of the underwriter either to reduce or eliminate a covered loss altogether. *Reliance Insurance Company v. THE ESCAPADE,* 280 F.2d 482 (5th Cir. 1960).