**The DOW CHEMICAL COMPANY,
Plaintiff-Appellant,**

v.

**ASHLAND OIL, INC., et al.,
Defendants-Appellees.**

No. 76–1328.

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1978.

Robert F. Kennon, Jr., Baton Rouge, La., Robert Eikel, Houston, Tex., for plaintiff-appellant.

Donald L. King, New Orleans, La., for Thomas Petroleum Transit.

Before BROWN, Chief Judge, GEWIN and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Dow Chemical Company (Dow) filed suit to recover for cargo lost from a barge owned by a division of Ashland Oil (Ashland). The District Court Judge struggled with a contract of affreightment containing several inconsistent, if not contradictory, clauses and, with what we imagine to have been a jurisprudential sigh of relief, picked out one clause, found it controlling, and granted summary judgment in favor of Ashland. Dow appeals.

This contract is difficult because it twice puts full responsibility for loss or damage of the cargo upon the shipper Dow—once under Clause 13,[1] and again under the first sentence of Clause 21 [2]—while at the same

1. Insurance:
    Hull and P & I Insurance will be carried with a first class underwriter by Carrier for Carrier's account. Cargo insurance will be assumed or carried by Shipper for his own account, with waiver of subrogation to the Carrier.

2. Clause 21 provides:

Release:
    The cargo shall be transported at the sole risk of such cargo, insofar as loss of or damage to such cargo is concerned, and neither Carrier nor any persons employed by Carrier nor any vessel, barge or other equipment used hereunder, shall be liable for any loss of or damage to such cargo regardless of the causes of such loss or damage unless [1]

time, by virtue of Clause 21 together with Clause 14,[3] subjecting the carrier Ashland to virtually all of the carrier obligations imposed by the Carriage of Goods by Sea Act (COGSA).

We sympathize with the difficulties of interpreting such a maladroitly drafted instrument which seems to go off in two opposite directions of no liability and some liability. However, we believe that the District Court assumed too much in granting summary judgment. Because the record is insufficiently developed to permit summary judgment, we reverse and remand.

Dow contracted with Thomas Petroleum Transit (Thomas), a division of Ashland, to have a cargo of liquid chloroform transported by barge from a loading port in Texas or Louisiana to Louisville, Kentucky. The cargo was loaded on the barge at Freeport, Texas and taken to a holding fleet in the Mississippi River, where it was to be placed in a tow bound upstream. As the tow was being made up, the barge struck a partially submerged object in the river and sustained a large hole. While the double-hulled construction of the barge left the cargo untouched, the barge was unable to continue the voyage. Thomas personnel ordered the barge to a marine works near Baton Rouge

for repairs, intending to transfer Dow's cargo to another barge to complete the voyage. The barge took on additional water while efforts were made to keep it afloat until the replacement barge arrived. Thomas personnel attempted to stabilize the barge by shifting the water load but it buckled amidships and sank, with a substantial amount of the cargo flowing into the river.[4]

Dow, the plaintiff shipper, sued, claiming that the negligence of Thomas's employees in repairing the barge caused the loss of the cargo. Ashland specifically denied the allegation of negligence, but bottomed its defense on the argument that, because "the contract in effect between the parties provided for cargo insurance to be assumed or carried by shipper (plaintiff) for his own account, with waiver of subrogation to the carrier (defendant), . . . [t]his suit may not be maintained by plaintiff." [Defendant's Answer, App. at 11]. This language, taken from Clause 13 of the Transportation Agreement, also formed the basis for Ashland's Motion to Dismiss and for Summary Judgment.[5]

The District Court Judge held that Clause 13 was valid and controlled the risk of loss between the parties.[6] Because Dow had

caused by Carrier's failure to use due diligence before and at the beginning of the voyage to make the vessel seaworthy, and properly manned, equipped, supplied and [2] failure to use due care in loading, handling, stowing, care and custody and discharging the cargo which shall be in the possession of the Tow from the time that the products reach the barge pipe or hose connection in loading until the products reach the shore line or hose connection in unloading. Without limiting the generality of the above, Carrier, although not a common carrier, shall be entitled to the same limitation of liability as common carriers receive under Title 46, U.S. C.A., Sec. 1301, et seq., U.S. Carriage of Goods by Sea Act. Nothing in this contract shall be construed to deprive Carrier of, or to limit Carrier's rights to any statutory protection or limitation of liability which would otherwise be applicable.

Brackets [1] and [2] are inserted for ease of reference.

3.    The Carrier shall, before and at the beginning of the voyage, exercise due diligence to make each vessel comprising the Tow seaworthy, properly manned, equipped and sup-

plied for the voyage and to make the cargo tanks, pipelines and valves of each barge suitable for the intended cargo and its pumps and heating coils, if any, in good working condition and shall use reasonable care in loading, stowage, custody, care and delivery of the cargo.

4.   Dow alleged that the barge sank because the carrier's repair crew turned off the pumps that had kept the barge from taking on additional water through the hole in the hull. Plaintiff's First Amended Complaint.

5.   Clause 13 is set out in note 1, *supra*.

6.   The District Court rested its minute entry order on cases holding that waiver of subrogation provisions, such as Clause 13, are facially valid and enforceable in contracts of affreightment between private carriers and shippers. See, e. g., *In re Gulf & Midlands Barge Line, Inc.*, 5 Cir., 1975, 509 F.2d 713; *Twenty Grand Offshore, Inc. v. West India Carriers, Inc.*, 5 Cir., 1974, 1974 A.M.C. 2254, 492 F.2d 679; *Fluor Western, Inc. v. G. & H. Offshore Towing Co.*, 5 Cir., 1971, 1972 A.M.C. 406, 447 F.2d 35.

not purchased insurance, "it thereby assumed the cargo insurance and waived any and all subrogation insofar as the Defendant carrier is concerned." The Court therefore granted Ashland's motion and dismissed Dow's complaint. This appeal followed.

### Summary Judgment: Dow We Or Down't We?

The standard governing summary judgments is clear in this Circuit:

"summary judgment can be granted only when there is no genuine issue as to any material fact and where the moving party is entitled to a judgment as a matter of law. If there is a real factual dispute between the parties, relevant to a legal claim, then they must be afforded a trial. Fed.R.Civ.P. 56(c); *McPhee v. Oliver Tyrone Corp.*, 5 Cir. 1974, 489 F.2d 718; *Keating v. Jones Development of Missouri, Inc.*, 5 Cir. 1968, 398 F.2d 1011. In order to determine these matters we look at the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits. Fed.R.Civ.P. 56(c); *Sherman v. Hallbauer*, 5 Cir. 1972, 455 F.2d 1236."

*Ecology Center of Louisiana, Inc. v. Coleman*, 5 Cir., 1975, 515 F.2d 860, 864. Applying this standard to the case before us leads us to conclude that summary judgment was at least premature.

The District Court's order resolved the case as if it presented only a legal question of contract interpretation. Our review of the contract indicates that it cannot accurately be interpreted or applied without factual determinations that cannot be made with the record that now exists. We therefore reverse to allow the development of an adequate record.

The clauses that make this contract of affreightment a problem to understand and apply are Clause 13 (see note 1, *supra*), which allocates between shipper and carrier the responsibility for insuring the cargo and for bearing the risks that would be insured, and Clause 21 (see note 2, *supra*), a release clause that at first appears to make the cargo bear the sole risk of cargo loss, then shifts some of the risk back to the carrier. This structure is made even more dense by Clause 14 (see note 3, *supra*), which puts on the carrier the traditional duty of exercising due diligence to make all the craft seaworthy.

The District Court found it easy to hold Ashland exculpated from any liability for the lost cargo under Clause 13. We find ourselves simply unable to resolve the issue at this time.

### When In Dowt

Clause 13 requires the shipper either to obtain marine cargo insurance or to assume liability for those losses that would be covered by such a policy. Dow elected to self-insure. In granting Ashland's motion for summary judgment, the District Court had to find or assume that the cargo loss would have been covered by a marine cargo insurance policy. However, the record says nothing about the risks that a standard or traditional marine cargo insurance policy would cover. Such information is necessary before a finding or assumption as to Dow's liability for the lost cargo can be made. Clause 13 in substance provides that the shipper is to bear any loss that he could insure under such a policy. Without a record that details the scope of insurance available under reasonably standard policies that gives the Court a basis for deciding whether the cargo loss was caused by an event within that coverage, summary judgment is improper.[7]

---

This is in distinction from the long standing judicial rule, based on public policy, invalidating towage contracts that release towers from all liability for their negligence. *Bisso v. Inland Waterways Corp.*, 1955, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 916; *Dixilyn Drilling Corp. v. Crescent Towing Co.*, 1963, 372 U.S. 697, 83 S.Ct. 767, 10 L.Ed.2d 78. Dow did not challenge the facial validity of Clause 13, and it is not at issue here.

7. *Cf. Tenneco Oil Co. v. Tug Tony*, S.D.Tex., 1971, 1971 A.M.C. 2336, 324 F.Supp. 834 (in suit by cargo owner against carrier for cargo loss, a provision similar to Clause 13 held valid, but material issues of fact precluding summary

The District Court must first learn from the parties the risks against which a reasonably prudent shipper would, and could, protect under cargo insurance. Depending on what this evidence reveals, several genuine issues of material fact may emerge. In its present sparse form, the record provides little information—and no censensus—as to the cause of the cargo loss. The insurance coverage provided by a traditional policy may exclude losses caused by certain events—such as an unseaworthy vessel,[8] a peril of the sea,[9] or negligence in the handling of the ship.[10] The coverage may be interrupted by other events—such as the vessel's departure from the river and arrival at the shipyard for repairs.[11] Without the terms of a usual policy before us, we do not know what facts beyond those stipulated by the parties are necessary to interpret or apply Clause 13. With such a policy in the record, the District Court will be able to find the necessary facts either on the current record or as supplemented with leave of the court, or, to the extent possible, have the parties add to their stipulation.

If the cargo loss would be covered by a standard marine cargo insurance policy, then under the broad terms of Clause 13, Dow contracted to bear the risk, and the judicial task is complete. However, if Dow is able to show that the terms of such a policy would not cover this loss,[12] then the District Court must decide how liability is to be allocated under Clauses 14 and 21. These clauses commit the carrier, Ashland, to the basic obligations, and allow to it virtually all the defenses, that the Carriage of Goods by Sea Act (COGSA) provides a common carrier. The statutory framework of COGSA, as incorporated into this private contract of affreightment, indicates what the District Court must discover in the event this loss is proved to be outside standard marine cargo insurance coverage.

Clause 14 and exception [1] of Clause 21 track the language of Section 3 of COGSA, 46 U.S.C. § 1303, in requiring the carrier to "exercise due diligence to make each ship . . . seaworthy . . . ."[13] The

judgment were raised by carrier's alleged liability for amount of loss not paid to cargo owner by insurer, including question as to the terms of the insurance coverage).

8. Marine cargo insurance policies commonly contain a clause stipulating that "the seaworthiness of the vessel as between the assured and the underwriter is hereby admitted." Gilmore and Black, The Law of Admiralty, § 3–27, at 154–55. Where relevant, it is for the trier of fact to determine whether a vessel is seaworthy for the purpose of marine cargo insurance coverage. E. g., *Aguirre v. Citizens Casualty Co.*, 5 Cir., 1971, 1971 A.M.C. 1134, 441 F.2d 141; *Tropical Marine Products, Inc. v. Birmingham First Insurance Co.*, 5 Cir., 1957, 1957 A.M.C. 1946, 247 F.2d 116.

9. See, e. g., *In re Gulf & Midlands Cargo Line, Inc.*, 5 Cir., 1975, 509 F.2d 713, 719–20.

10. *Id.*; see also *Horn v. Cia de Navegacion Fruco, S.A.*, 5 Cir., 1968, 1968 A.M.C. 2548, 404 F.2d 422.

11. The District Court rejected Dow's argument that:

"the voyage for which this towage contract was signed ended when the barge was damaged and taken out of tow and transported to the Port Allen Marine Service facilities . . . At that moment the above quoted provision of the contract became inoperative and . . .

under other provisions of the . . . contract the defendants were bound to use due care in the handling of the barge."

The Court held that "[t]he plaintiff simply cannot divide this contract . . . to make one provision operable before the initial damage to the barge occurred, and another portion applicable after the damage occurred."

However, this does not decide whether a traditional marine cargo insurance policy would afford different coverage, or exclude coverage, for portions of a voyage that differ from the voyage described, or which might constitute a deviation. See, e. g., *Escambia Treating Co. v. Aetna Casualty & Surety Co.*, N.D.Fla., 1976, 1977 A.M.C. 1285.

12. The standard rule is that "[t]he burden of proving a loss by a peril insured against on a cargo policy is on the insured." *Continental Food Products v. Insurance Co. of North America*, 5 Cir., 1977, 1977 A.M.C. 2421, 544 F.2d 834, 836. We believe that, by analogy, the broad terms of Clause 13 places on the cargo shipper the burden of establishing initially that marine cargo insurance would not have covered this loss.

13. 46 U.S.C. § 1303 provides in part:

(1) The carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to—

(a) Make the ship seaworthy;

record that now exists indicates that, at the beginning of the voyage, Ashland met its obligation to provide a seaworthy barge. We assume, without deciding, that Dow will be unable to show a breach of this duty. However, Ashland could still be held liable under exception [2][14] of the Clause 21 release provision, which requires this private carrier to meet the obligation of § 3(2) of COGSA.[15]

Thus, if Dow can show that marine cargo insurance would not cover this loss, the District Court would then have to ask whether the loss was one caused by an event for which the carrier would be liable. Was the cargo loss a proximate result of the carrier's negligent care, custody or handling of the cargo, as Dow alleged and Ashland denied? The record provides no basis for answering this question.

Nor would the Court's inquiry on remand end here in view of the exception of § 4 of COGSA.[16] Under this framework, only negligence in the care of goods, not negligence in the navigation or management of the ship, would make Ashland liable to Dow. The distinction between errors in navigation and management, on the one hand, and negligence in the care and handling of cargo on the other, cannot be applied unless we know factually what caused the cargo loss. Dow claims that the carrier's employees were negligent in failing to keep pumps operating when the barge began to take on large amounts of water. Ashland denies that any negligence was involved. This disputed issue of fact alone makes summary judgment impossible. The cargo loss may have also been a proximate result, or at least a natural consequence, of the earlier collision between the barge and the sunken object. If the cargo loss was due to the collision, and the collision resulted from an error in navigation and management of the barge, Ashland would be relieved from liability for the cargo loss and Dow would bear the loss.[17] But it is also possible that the concurrence of errors in navigation and negligent handling of the cargo were proximate causative factors in the loss, leaving the Court with the need to allocate or apportion the loss between shipper and carrier.[18]

(b) Properly man, equip, and supply the ship;
(c) Make the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation.

14. The provisions of Clause 21 are set forth at note 2, *supra.*

15. 46 U.S.C. § 1303 provides:
The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.

16. 46 U.S.C. § 1304(2) provides in part:
(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—
(a) Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship . . . .

17. Cases arising under COGSA and its predecessor, the Harter Act, 46 U.S.C. § 192, indicate that the same physical acts can equally well be viewed as failure to use due care in handling cargo (for which the carrier would be liable), and as errors in management or navigation of a vessel (for which the carrier would not be liable), depending on the circumstances. See generally, Gilmore and Black, The Law of Admiralty, § 3-28, at 156-59. For example, in some cases the failure to monitor ship ventilators is negligence in the care and handling of cargo, when the cargo is a perishable product that requires exposure to air. E. g., *Daido Line v. Thomas P. Gonzalez Corp.*, 9 Cir., 1962, 1962 A.M.C. 1295, 299 F.2d 669. On the other hand, in rough seas, the failure to trim the ventilators can result in the ship taking on water in amounts that endangers the stability of the vessel, and may constitute error in management and operation. See *Leon Bernstein Co. v. Wilhelmsen*, 5 Cir., 1956, 232 F.2d 771; *Hershey Chocolate Corp. v. The Mars*, E.D.Pa., 1959, 1959 A.M.C. 2035, 172 F.Supp. 321, aff'd, 3 Cir., 273 F.2d 617; cf. *Brown and Williamson Tobacco Corp. v. The S. S. Anghyra*, E.D.Va., 1957, 1958 A.M.C. 472, 157 F.Supp. 737, 746–47 (defendant argued that the failure to ventilate cargo sufficiently was dictated by need to supply adequate power for ship as a whole). *See also, Horn v. Cia de Navegacion Fruco, S.A.,* 5 Cir., 1968 A.M.C. 2548, 404 F.2d 422; *Wilbur-Ellis Co. v. M/V Captayannis "S"*, D.Or., 1969, 1969 A.M.C. 2484, 306 F.Supp. 866.

18. See, e. g., *H. Schnell & Co. v. S. S. Vallescura*, 1934, 1934 A.M.C. 573, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; *Nat G. Harrison Overseas Corp. v. American Tug Titan*, 5 Cir., 1975, 516 F.2d 89, on rehearing, 5 Cir., 520 F.2d 1104; cf. *Orient Mid-East Lines, Inc. v. A Shipment of*

We hold that summary judgment was improper because genuine issues of material fact exist that cannot be resolved on this record. On remand the first, and probably determinative, question is whether the loss of Dow's cargo was the type of loss ordinarily covered by traditional marine cargo insurance. If such a policy would not cover this loss, then the Court must examine the obligations and defenses of the carrier under Clauses 21 and 14. A record informative on these issues will enable the Trial Judge to apply the contract in a way that, we believe, will accord its various parts whatever respect they deserve. The extent and nature of the evidentiary hearing on remand is for the Trial Judge to determine in the first instance.

REVERSED and REMANDED.

Rice, 5 Cir., 1974, 1974 A.M.C. 2593, 496 F.2d 1032 (unseaworthiness and negligent manage-

ment of vessel were concurrent causes of the damage to the cargo).