753 F.2d 382
 HORIZON PETROLEUM CO., Plaintiff-Appellant,
v.
BARGES DIXIE 162, 234 AND 236, et al., Defendants-Appellees.
 No. 84-2225.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 20, 1985.
 
 Stuart B. Collins, Sharpe & Kajander, Houston, Tex., for plaintiff-appellant.
 William A. Durham, Houston, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GEE, REAVLEY and RANDALL, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 Bride Co., Horizon Petroleum Co., and Osborne Energy Corp. (the "plaintiffs") brought separate actions in the district court alleging that the defendant Dixie Carriers, Inc. (Dixie) was responsible for damage to cargoes of crude oil that Dixie had delivered. After a hearing, the district court granted summary judgment for Dixie. We affirm.
 
 I.
 
 2
 During 1981 the plaintiffs separately entered into contracts of affreightment with Dixie. These contracts were identical, providing that Dixie would transport crude oil from the Port of Houston to various ports in Louisiana. Each also stipulated that the plaintiffs would provide insurance for cargo loss or damage and that Dixie would be named as co-insured in the insurance contracts. Finally, each contract included a waiver-of-all-rights-to-subrogation clause.
 
 
 3
 The plaintiffs brought ten actions in the district court against Dixie, alleging that the crude oil loaded into Dixie's barges reached its destination port "short, slack, and damaged in other respects." By agreement of the parties, the district court consolidated these actions. Dixie then moved for summary judgment, basing its motion on the plaintiffs' contractual obligation to insure the cargo against loss or damage. After a hearing, the district court granted Dixie's motion. This appeal followed.
 
 II.
 
 4
 The plaintiffs contend that the district court erred in granting Dixie's motion for summary judgment because the marine cargo insurance contracts into which the plaintiffs entered prohibit assignment of policy benefits to third parties. The plaintiffs contend that the clauses of the affreightment contracts that require the plaintiffs to name Dixie as a co-insured and to secure a waiver of subrogation and/or assignment are invalid because these clauses conflict with the marine cargo insurance contracts. The plaintiffs also contend that the benefit-of-insurance and waiver-of-subrogation clauses may be unconscionable and void as against public policy and that the district court erred in granting summary judgment before ascertaining the details of the formation of the contracts and the relative market power of the parties. Finally, the plaintiffs contend that several clauses in the contracts of affreightment dealing with the respective liabilities of the parties are inconsistent, and that the district court erred in granting summary judgment before determining the cause of the oil loss.
 
 
 5
 None of these contentions provides the plaintiffs with a basis for relief. This case is governed by the contracts into which the parties entered. The plaintiffs' first argument, that the benefit-of-insurance and waiver-of-subrogation clauses in the affreightment contracts are invalid because they conflict with the plaintiffs' marine cargo insurance policy, is meritless. Clause 22[1] of Dixie's contracts of affreightment with the plaintiffs requires the plaintiffs to secure and maintain cargo insurance and to hold Dixie harmless for any loss or damage to the cargo. Clause 22 also requires the plaintiffs to name Dixie as a co-insured in the cargo insurance policies or to secure a waiver of assignment and/or subrogation from the cargo underwriters in favor of Dixie. The plaintiffs, by procuring cargo insurance policies that prohibited assignment of policy benefits, breached their affreightment contracts with Dixie. The plaintiffs' failure to obtain the proper insurance did not provide them with a basis on which to resist Dixie's summary judgment motion and does not provide them with a basis for relief here.
 
 
 6
 The plaintiffs' argument regarding the unconscionability of the benefit-of-insurance and waiver-of-subrogation clauses in the affreightment contracts also provides the plaintiffs with no basis for relief. We have upheld the validity of benefit-of-insurance and waiver-of-subrogation clauses in affreightment contracts. Hercules, Inc. v. Steven Shipping Co., 698 F.2d 726, 738 (5th Cir.1983) (en banc). The plaintiffs recognize our Hercules holding, but assert that the district court erred in granting summary judgment because the facts of this case indicate that these exculpatory clauses in the affreightment contracts transform these agreements into invalid "contracts of adhesion."
 
 
 7
 We disagree. The affreightment contracts are commercial undertakings entered into by sophisticated businesspersons. The plaintiffs raised no fact issue, by affidavit or other proof, at the hearing on Dixie's summary judgment motion that the exculpatory clauses were unconscionable. The district court therefore properly granted summary judgment on this issue. See Fed.R.Civ.P. 56(e).[2]
 
 
 8
 Finally, the plaintiffs contend that several clauses of the affreightment contracts regarding the parties' respective liability for cargo loss are contradictory and create a material issue of fact concerning the cause of loss in each of the ten cases. Specifically, the plaintiffs contend that although clause 22[3] obligates them to insure the cargo against loss, clause 18[4] provides that Dixie will be liable for shortages at outturn of greater than one percent. The plaintiffs contend that Dixie could be liable for losses caused by Dixie's failure to exercise due care or by excessive heat, humidity, or evaporation. Therefore, the argument runs, a material issue of fact exists regarding the cause of the oil loss, and the district court erred in granting summary judgment.
 
 
 9
 We cannot accept this contention. Clauses 18 and 22 are not contradictory. Clause 22 deals with the insurance obligations of the parties to the contract, requiring the plaintiffs to insure the cargo and to hold Dixie harmless for any loss. Clause 18 simply deals with Dixie's potential liability for a shortage at outturn; it does not automatically impose liability on Dixie for shortages greater than one percent. In a case similar to the instant case, we held that if the cause of the cargo loss came under the marine cargo insurance policy the plaintiff was obliged to provide, the loss should fall upon the plaintiff and its insurer. Dow Chemical Co. v. Ashland Oil, Inc., 579 F.2d 902, 905 (5th Cir.1978). Although in Dow we held that summary judgment was improper and remanded for determination of whether the cargo loss was covered by the insurance policy called for by the parties' contract, we need not remand here because clause 22 provides that any loss will be presumed to be covered by the plaintiffs' insurance. Because of this presumption in the affreightment contracts, the responsibility for the damaged oil lies with the plaintiffs, regardless of the cause of the damage. In sum, the contracts are valid as written and, as written, they clearly evidence a general intent of the parties that in exchange for receiving a lower towage rate the charterers were to stand all risks of loss. The district court's entry of summary judgment for Dixie was therefore correct and is
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Clause 22 provides:
 INSURANCE AND MARINE PERILS: Owner shall carry at its expense hull and P & I insurance (but not tower's liability covering cargo) to the full value of the tow used in fulfillment of this contract. Charterer hereby acknowledges that the towage rate specified herein does not contemplate or include liability for loss of or damage to the cargo or an allowance for liability insurance covering the cargo, and as additional consideration supporting Owner's undertakings, Charterer shall and it does hereby agree to hold Owner, its tow, masters, crew, agents and employees harmless from claims for cargo loss, damage or contamination, whether arising or resulting from an act of neglect or default in the navigation or management of the tow, including but not limited to explosion, fire, collision, stranding, salvage operations, equipment defects, or other peril, danger or accident of navigable waters or from any other cause of whatsoever kind arising. In furtherance hereof, Charterer agrees to secure and maintain in effect a contract of cargo insurance, to the full market value of all cargoes transported hereunder, insuring damage, contamination, salvage and general average contributions, etc., and to have Owner's name inserted as an additional insured in said policies, with loss payable to Charterer and Owner, as their respective interests may appear, and Owner shall be deemed to be co-insured, whether so named or not, or to secure a waiver of assignment and/or subrogation from the cargo underwriters in favor of Owner on account of any cargo claims paid by such underwriters. In the event that Charterer shall fail to procure and maintain insurance as provided herein, Charterer shall be liable to hold Owner harmless from any claims or demands, losses, cost and expenses, to the same extent that the required insurance would have protected Owner; and in any suit claim or suit for cargo loss or damage, it will be presumed that such insurance, if it had been procured and maintained would have covered the occurrence, loss or damage in question. Copies of all cargo policies shall be furnished to Owner. All deductible under all cargo policies shall be for the account of Charterer.
 Without limiting the generality of the above, Owner, although not a common carrier, shall be entitled to the same limitation of liability as common carriers receive under the Carriage of Goods by Sea Act (46 U.S.C.A. 1300 et seq.). Nothing in this contract shall be construed to deprive Owner of, or to limit Owner's rights to, any statutory protection or limitation of liability which would otherwise be applicable.
 
 
 [2]
 Rule 56(e) provides in pertinent part:
 When a Motion for Summary Judgment is made and supported as provided in this rule, an adverse party may not rest on the mere allegations or denial of his pleadings, but his response, by affidavit or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 
 
 [3]
 For the text of clause 22, see supra note 1
 
 
 [4]
 Clause 18 provides:
 OUTTURN: Any shortage in outturn (unless resulting from a condition as described in force Majeure clause or unless resulting from some cause for the consequences of which Owner is exempt from liability under the terms hereof), in excess of one percent (1%) in volume shall be for account of Owner on an evaluation declared by the Shipper or Charterer at the time of loading provided, that Owner shall not be liable for any shortage in outturn unless a comparison of barge ullage figures at loading port and at discharge port establishes that a volume loss in excess of one percent (1%) has actually occurred in transit.