### THE ANNIE LORD.

### THE FLORA L. OLIVER.

(District Court, D. Massachusetts. December 29, 1917.)

### No. 1457.

1. SALVAGE ⬅17—RIGHT TO COMPENSATION—SUCCESS OF EFFORTS.
   It is not necessary, in order to establish a right to salvage, that the claimant should actually complete the work of saving the property at risk; but it is sufficient if he endeavor to do so, and his efforts have a causal relation to the eventual preservation of it.

2. SALVAGE ⬅14—RIGHT TO COMPENSATION—SAVING HUMAN LIFE.
   An outbound fishing vessel, which rescued the crew of a water-logged lumber schooner, who were in danger of freezing, and after trying unsuccessfully to tow the schooner returned to port and notified a revenue cutter, which brought in the derelict, held entitled to salvage, and her crew to a share in the award for saving human life, under Comp. St. 1916, § 7992.

In Admiralty. Suit for salvage by Antonio M. Brown, master of the fishing schooner Flora L. Oliver, against the schooner Annie Lord. Decree for libelant.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. M. Marshall, of Gloucester, Mass., for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

MORTON, District Judge. This salvage case was heard in open court on December 18, 1917. At the conclusion of the arguments I gave judgment orally, and said that I would put on file a formal memorandum of decision sufficient for the purposes of appeal.

The Annie Lord was a three-masted schooner. She sailed with a cargo of lumber from Windsor, N. S., for Fall River, Mass., about January 20, 1916. On or about February 19th following, she was knocked down by a squall and filled with water. She became waterlogged and unmanageable. The crew were driven on deck. In this condition she was found next day by the Flora L. Oliver in the early afternoon. The weather was severe, very cold, with a high wind and rough sea. The crew of the Lord had suffered considerably from exposure and were in a precarious situation; several of them were already frost-bitten, and it is doubtful whether they would have survived the coming night without serious loss or injury. At the request of the master of the Annie Lord, the Oliver took off the crew. All, including the master, went to bed at once. Most of them stayed below until the Oliver reached port, and none did any work. Those who were frost-bitten received such care and treatment as was possible under the circumstances.

The Annie Lord, at the time of the rescue, was about 16 miles east-southeast of Thacher's Island Light. The wind was strong from the west. Capt. Brown of the Oliver decided to try to tow the Lord into Boston. Five men from the Oliver accordingly went aboard the Lord put more sail on her, and endeavored to shape her course as well as they could. On account of her water-logged condition, and perhaps for other reasons, she did not mind her helm; but her course could be more or less altered by the trim of her sails. The work was so exposing and the weather so severe that the Oliver's men found it impossible to stay long at a time on the Lord and were frequently changed; but I do not gather that at the beginning of the tow the conditions were such as to involve any considerable danger to men accustomed to the sea.

During the night the wind drew to the north and increased. The cold became more intense, and the sea reached a point described by Capt. Merriam, of the Lord, as "very rough." The tow lines parted several times and were repaired. Finally, about 1:30 a. m., they again broke. There were no further lines available, the weather was extremely bad, and the frost-bitten men of the Lord's crew were apparently in need of medical attention. The master of the Oliver decided to give over the attempt to tow the Lord into port. At this time the vessels had reached a point about five or six miles to the northeast of Minot's Ledge Light. It was a bad situation for the Lord if the wind should draw more to the northeast. Capt. Brown accordingly gave instructions to have the course of the Lord changed; she was headed straight off shore, and her sails were trimmed so as to give

her an easterly course. A signal lantern was hung in the Lord's rigging to warn other vessels, and two or three torches were lighted and placed on her decks for the same purpose, and to assist in identifying and locating her.

The Oliver then, not without difficulty, and perhaps some danger, took off her men from the Lord and bore away for Gloucester, where she arrived early the following forenoon. She was so badly iced up that it was impossible to work her sails, and she had to be towed into port. One of her crew testified that, in 40-odd years at sea, it was the worst night within his experience. This is perhaps somewhat of an exaggeration, but I think there can be no doubt that it was a very severe time. Having arrived at Gloucester, most of the Lord's men were sent to the hospital, where, however, they did not stay long; and Capt. Merriam, at the suggestion of Capt. Brown, went to the telephone, called up the custom house, and arranged to have the United States revenue cutter Gresham, then in the port of Boston, notified to go out and pick up the Annie Lord. Capt. Brown testified that he was unable to do this himself because of the condition of his own vessel, which required his attention, and that it took his crew all that day and part of the next to get the ice off her, so that she was fit to go to sea. The Gresham, as a result of this notification, went out and found the Annie Lord near Peaked Hill Bars, off Cape Cod, took her in tow, and brought her into Boston, arriving here on the following day. After the Lord was left by the Oliver, she lost two of her masts and most of her deck cargo.

The Flora L. Oliver is a two-masted fishing schooner, about 105 feet long, and about 115 tons gross. At the time when she fell in with the Lord she was outward bound on a cod and halibut trip off the Nova Scotia coast, intended to last about three weeks. She carried a crew of 17, besides the master. As a result of her salvage efforts, she destroyed gear worth about $130, and lost about five days' time. Her value is not stated. The gross earnings of the Oliver on the trip which was interrupted by the salvage were about $1,000 a week. The parties agree that the value of the Lord was $1,500 on the vessel and $4,000 on the cargo, a total of $5,500. As to the foregoing facts there is not much controversy between the parties.

The real questions are whether the Oliver is entitled to any salvage, and, if so, to what amount. The respondent contends that the efforts of the Oliver, however praiseworthy, were unsuccessful, and did not in fact result in the saving of any property, and that therefore no salvage can be awarded.

[1, 2] It is not necessary, in order to establish a claim to salvage, that the salvor should actually complete the work of saving the property at risk. It is sufficient if he endeavor to do so, and his efforts have a causal relation to the eventual preservation of it. In The Strathnevis (D. C.) 76 Fed. 855, 862, the salving steamer was unable to get the imperiled vessel into port and was forced to leave her 60 miles off shore; but it was held that her services in towing the disabled vessel nearly 500 miles and bringing her nearer port, and in the way of passing vessels, were sufficient to entitle her to salvage. See, too, The

Flottbek, 118 Fed. 954, 55 C. C. A. 448. In Adams v. Island City, 1 Clif. 210, Fed. Cas. No. 55 (in this district), the salving schooner endeavored to tow the wreck into port, but was unable to do so, and abandoned the attempt, leaving the wreck anchored several miles off -shore and in a dangerous position. The schooner, on arriving in port, gave notice of the location and dangerous situation of the wreck, and help was sent to it. It was held that the schooner was entitled to salvage. In The Samuel Hubbard (District Court, Massachusetts), 229 Fed. 843, where a fishing schooner put men on an unmanageable derelict, and then went on to port and sent out a tug, which towed the derelict in, it was held that the schooner was entitled to salvage amounting to $1,675, on a total valuation of property saved amounting to $5,300. Putting men on the derelict did not assist in the actual salvage.

In the present case, as things turned out, the work done in towing the Lord from the position off Thacher's Island to that off Minot's Light neither helped nor hindered in the final result. The cause of the Annie Lord's being saved was the message brought into port by the Oliver and communicated to the Gresham. In order to do this, the Oliver temporarily abandoned the voyage that she was on and returned to port. It is true that Capt. Brown of the Oliver did not, in testifying, state distinctly and categorically that this reason was in his mind, but from various things that were testified to I have no doubt that it was. What was done at the time when the Oliver left the Lord indicates pretty clearly that Capt. Brown then expected to send after her. The fact that Capt. Merriam, instead of Capt. Brown, under agreement between the two, did the actual telephoning, seems to me not to diminish the rights which the Oliver would otherwise have. I do not regard Capt. Brown's assent as in any degree a waiver of the Oliver's claim to salvage.

Upon all the evidence, I find that the services of the Flora L. Oliver and her crew were the proximate cause of assistance being sent to the Annie Lord and of her being saved from what otherwise would have been total loss; and I am of opinion that the Oliver has established her claim to salvage. Under the statute (U. S. Comp. St. 1916, § 7992) the saving of human life entitles its salvors to a fair share in the award, and it is perhaps necessary to make a finding on the question whether the action of the Oliver saved life. The crew of the Lord were in no danger of death by drowning, unless by being washed overboard; but they were admittedly in great danger of death from exposure. They were all in serious condition when rescued. On their own vessel they were without shelter or warm food, and exposed to intense cold and a rough sea. Whether they would have lived until another vessel than the Oliver picked them up is mere speculation. The Oliver certainly rescued them from a position of great and imminent peril. It seems to me that her action saved human life within the meaning of the statute.

As to the amount of salvage: It is well settled that the amount of salvage should be sufficient to obtain again the same service, if conditions should repeat. The Lord was an abandoned vessel; and the

public benefit from saving what might otherwise become a dangerous floating derelict in frequented paths of commerce is entitled to recognition. The saving of life and the temporary abandonment of her voyage by the salving vessel are to be taken into account, as well as the enterprise, courage, and skill displayed by the salvors. As the Gresham, being in the United States revenue service, is not entitled to salvage, apparently the award to the Oliver will be the only salvage charge against the Annie Lord and her cargo. Upon all the facts, I find that the Oliver is entitled to salvage in the sum of $1,600. I am not asked to apportion it.

Decree accordingly, with costs.