WEST COAST SHIPPING BROKERS CORPORATION, as owner of the M/V "CEBU I", and on behalf of its Master and Crew, Plaintiffs-Appellants,

v.

The FERRY "CHUCHEQUERO", her engines, tackle, etc., Defendant-Appellee.

No. 78–1640

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 26, 1978.

Henry L. Newell, Daniel D. Douglass, Balboa, Canal Zone, for plaintiffs-appellants.

Allen & Ostrander, Harry H. Allen, Jr., Mark D. Ostrander Mulford, Balboa, Canal Zone, for defendant-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

RONEY, Circuit Judge:

This is a marine salvage action brought by the owner of the M/V CEBU I. Plaintiffs claim they are entitled to compensation for the rescue efforts of the CEBU I on behalf of the ferry CHUCHEQUERO. Defendant contends that no significant assistance was rendered by the CEBU I and that the CHUCHEQUERO was saved solely by

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

the efforts of her own members. The district court granted defendant's motion for summary judgment based on affidavits and arguments of counsel. Because the evidence raises several issues as to material facts which require an evidentiary hearing, summary judgment was improper. We reverse and remand.

## I.

On December 12, 1976, the ferry CHUCHEQUERO left Cristobal Harbor, Cristobal, Canal Zone enroute to Venezuela. When its engines stopped, flares were sent up by the CHUCHEQUERO and seen by the CEBU I. The CEBU I maneuvered close enough to the CHUCHEQUERO to establish voice contact, a towline was attached and the CEBU I began towing the CHUCHEQUERO back toward Cristobal. The towline broke. After a second towing commenced, the line again broke. The CEBU I then departed. Several hours later the crew of the CHUCHEQUERO was able to start the engines and return to Cristobal.

Conflicting evidence was introduced as to the length of time and the distance of each towing. Plaintiffs said the tows lasted over two hours and covered 10 miles. Defendant said they took less than 1½ hours and progressed only 3 miles.

Defendant's evidence suggests that the towline broke due to rough seas and the use by the CEBU I of inadequate towlines. Plaintiffs said the towing attempts failed due to the weather conditions and the negligence of the CHUCHEQUERO's crew in allowing the towlines to rub across rough portions of the bow.

Defendant characterized the CEBU I's departure as a voluntary abandonment, while plaintiffs said that the CHUCHEQUERO's master requested that the towing effort stop due to the danger involved.

The degree of peril in which the CEBU I found the CHUCHEQUERO is also in dispute. Plaintiffs' evidence showed that the CHUCHEQUERO was approximately 3 miles offshore in a rocky area at about 17:45 hours and totally without power. The defendant maintained that the CHUCHEQUERO was 10–12 miles from shore, in a shipping path, and in no danger of striking rocks or running aground.

## II.

■ A valid claim for salvage compensation requires a marine peril, service voluntarily rendered where not required by an existing duty, and success in whole or in part in saving the vessel or contribution to such success. *The Sabine*, 101 U.S. 384, 25 L.Ed. 982 (1879). There is no dispute in the instant case that the first two elements were present. Defendant challenges only the assertion that the efforts of the CEBU I contributed to the ultimate salvation of the CHUCHEQUERO.

■■ The rule in salvage cases has always been that only success is rewarded. *The Blackwall*, 77 U.S. (10 Wall.) 1, 19 L.Ed. 870 (1869). While the distressed vessel must be saved, however, it is not necessary that it be saved solely by the efforts of the one seeking the award. The claimant must merely have rendered some beneficial service to the distressed vessel which *contributed* to its relief from danger. *The Annie Lord*, 251 F. 157, 159 (D.Mass.1917); M. Norris, *The Law of Salvage* § 91 (1958). Salvage claims have been allowed where the salvor did nothing more than temporarily fight a fire on another ship until the Coast Guard arrived, *Dize v. Steel Barge Beverley*, 247 F.Supp. 968 (E.D.Va.1965), or tow the stricken vessel out of danger until emergency repairs could be made, *The Veendam*, 46 F. 489 (S.D.N.Y.1891). The rule stated by Norris in *The Law of Salvage*, § 92 explains:

When aid is called for because of a breakdown it is not required . . . that the salving vessel tow the distressed ship into port. A benefit may be conferred on the salved vessel by . . . taking the disabled vessel to a place of comparative safety permitting repairs to be made. After these services have been rendered and the repairs made, thus permitting the aided vessel to resume her

voyage, any claim that the services of the salvor did not result in success or contribute to the successful outcome cannot be allowed.

*Conolly v. S. S. Karina II,* 302 F.Supp. 675 (E.D.N.Y.1969), involved a situation similar to the instant case. The S. S. KARINA was stranded without power or radio and was in danger of running aground. Plaintiff towed it through rough seas at night into safe waters. Plaintiff left the KARINA to return to port to refuel. Soon after plaintiff returned and resumed towing, the KARINA's crew succeeded in making emergency repairs and the KARINA finished the voyage under its own power. *Id.* at 678–79. The KARINA argued that it was saved by the efforts of its own crew and that plaintiff contributed nothing to the success. After a trial on the merits, the district court ruled that the plaintiff effectively contributed by removing the KARINA to a position of relative safety.

### III.

■ The district court in the instant case heard only the summary judgment affidavits and arguments of counsel before ruling as a matter of law that the CEBU I did not contribute to the saving of the CHUCHEQUERO. Under Rule 56, F.R.Civ.P., summary judgment is proper only when there is no genuine issue as to any material fact and where the movant is entitled to a judgment as a matter of law. *Dow Chemical Co. v. Ashland Oil, Inc.,* 579 F.2d 902, 903 (5th Cir. 1978). Construed in the light most favorable to plaintiffs, *Southern Distributing Co. v. Southdown, Inc.,* 574 F.2d 824, 826 (5th Cir. 1978), the evidence raises a genuine issue as to several material facts relevant to the determination of whether a beneficial service was rendered and the extent of that benefit.

The position of the CHUCHEQUERO, the reasons why the towing failed, and the distance and duration of towing, all in dispute, are critical in showing the causal rela-

tion, if any, of the efforts of the CEBU I to the eventual preservation of the CHUCHEQUERO. Plaintiffs' evidence suggests that the CHUCHEQUERO was in danger of running aground, that plaintiff towed the ferry several miles into safer water, thus providing time for engine repair before disaster, that plaintiff had to abandon the tow due to circumstances beyond its control, and that the captain of the ferry agreed at the time that the towing should be abandoned. On remand, if plaintiffs can prove all of the facts contained in their affidavit and sworn petition, and should defendant fail to prove that recovery is precluded by the CEBU I's voluntary abandonment, plaintiffs have arguably rendered a beneficial service to the CHUCHEQUERO by giving it several hours in comparatively safe waters to effect its repairs.

REVERSED AND REMANDED.