**In the Matter of IOWA FLEETING SERVICE, INC., et al.**

**Fire Protection Dist. No. 1 of West Feliciana, et al,**

v.

**M/K Kay Eckstein, et al.**

**Nos. 99–987–C–M2, 01–412–C–M2.**

United States District Court,
M.D. Louisiana.

March 5, 2002.

Robert B. Fisher, Jr., Thomas D. Forbes, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, LA, for Fire Protection District No. 1 of West Feliciana Parish, the Town of St. Francisville, and the masters and crews of M/V Acadia, M/V Cepco I and M/V Cepco II, salvage claimants in limitation action and plaintiffs/salvage claimants in Fire Protection District No. 1 et al v. M/V Kay A. Eckstein.

Hugh Ramsay Straub, John A. Scaldione, Terriberry, Carroll & Yancey, New Orleans, LA, for Iowa Fleeting Service, Inc., Bluegrass Marine, Inc. and Marquette Transportation Co., Inc., the owners, bareboat charterers and managers of M/V Kay A. Eckstein, petitioners in limitation and defendants in Fire Protection District No. 1 et al v. M/V Kay A. Eckstein.

Francis J. Barry, Jr., Allen F. Campbell, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for Zurich American Insurance Company, Inc., underwriters of M/V Kay A. Eckstein.

K. Wade Trahan, Ottinger Hebert, Lafayette, LA, for Acadian Ambulance and Air Med Service, Inc., claimants in limitation.

## RULING

TYSON, District Judge.

The court, after carefully considering the petition, the record, the law applicable to this action, and the Report and Recommendation of United States Magistrate Judge Christine Noland dated February 4, 2002, to which no objection has been filed, hereby approves the report and recommendation of the magistrate judge and adopts it as the court's opinion herein.

Accordingly, the motion for summary judgment and motion for partial summary judgment of Iowa Fleeting Service, Inc., Bluegrass Marine, Inc. and Marquette Transportation Co., Inc. are DENIED.

## *MAGISTRATE JUDGE'S REPORT*

NOLAND, United States Magistrate Judge.

This matter is before the Court on the Motion for Summary Judgment and Motion for Partial Summary Judgment of Iowa Fleeting Service, Inc., Bluegrass Marine, Inc. and Marquette Transportation Co., Inc. (R.Doc. 49.) Movants seek summary judgment on the salvage claim of the Office of Emergency Preparedness of West Feliciana Parish and partial summary judgment on the salvage claims of Fire Protection District No. 1 of West Feliciana Parish, the Town of St. Francisville, Thomas W. Rabalais and William Richard. The respective parties have filed an opposition.

## FACTS AND PROCEDURAL HISTORY

On May 23, 1999, the tow boat M/V KAY A. ECKSTEIN was pushing 28 barges on the Mississippi River northbound. Eighteen of the barges were empty. The other 10 contained cargo that consisted of steel, molasses, urea fertilizer and rock salt.

At about 6 p.m., as the boat was passing a point about six miles north of the St. Francisville ferry landing, a fire started in the engine room, which the crew unsuccessfully attempted to put out. Capt. Wayne Wadley sent out a radio distress call. When the fire caused the boat to lose its engine power and steering capability, Capt. Wadley ordered most of his crew to go forward to the barges. A fishing boat rescued Capt. Wadley and some of the crew. Other crew members made their way to the barges.

The operator of the ferry M/V ACADIA received Wadley's distress call. The ferry operator called Rabalais, the ferry superintendent. Rabalais then called West Feliciana District Fire Chief Tommy Boyett, and Boyett ordered the parish and town's volunteer fire departments to respond by placing a pumper fire truck on the ACADIA.

When Rabalais arrived at the scene, he assumed command of the ferry, piloting it close to the barges. When the ferry got close enough to the barges, West Feliciana volunteer firemen used a ladder from the fire truck to remove the seven crew members of the KAY A. ECKSTEIN who were still on the barges. A West Feliciana Sheriff's Department boat took Capt. Wadley and the remaining crew members from the fishing boat to the ferry.

Before Rabalais left the dock, he called Cajun Electric Power Co. (CEPCO) fleet boats for assistance. Once the crew had been transported onto the ACADIA, Rabalais moved the ferry's bow to the center of the KAY A. ECKSTEIN'S flotilla and began pushing it towards the east bank of the river. Eventually, the CEPCO boats,

CEPCO I and CEPCO II, helped push the flotilla into a position where the firefighting equipment aboard the ACADIA could be used.

The first water from the ACADIA'S fire mains and the fire truck reached the KAY A. ECKSTEIN at about 7 p.m. For the next several hours, the firefighters and the ferry crew poured water and foam onto the fire. Although they were able to put out the fire in the boat's upper decks and confine it to the engine room, they were unable to fully extinguish it. The reason was that the fire was being fed by diesel fuel in the ship's engine room.

At 1:30 a.m. on May 24, 1999, the Exxon fireboat SEA RIVER BAYOU STATE arrived and took over firefighting duties. The ACADIA then left the scene, returning to the east bank ferry landing, allowing the firefighters and fire truck to leave.

The CEPCO I left after midnight. The CEPCO II remained at the scene, holding the KAY A. ECKSTEIN against the bank as firefighting efforts continued. Some time before 3 a.m. on May 24, the SEA RIVER BAYOU STATE stopped firefighting efforts because the KAY A. ECKSTEIN was in danger of sinking. The U.S. Coast Guard, the Louisiana State Police and the captain of the SEA RIVER BAYOU STATE then decided to pump more water onto the KAY A. ECKSTEIN so that it would sink and thus extinguish the fire. At 7:30 a.m., that is precisely what occurred. The boat sank, with part of its pilot house and upper decks remaining above water.

The West Feliciana Parish Office of Emergency Preparedness, Fire Protection District No. 1 of West Feliciana Parish, the Town of St. Francisville, Thomas W. Rabalais and William Richard are among the parties who have filed salvage claims in connection with the work they did on May 23–24, 1999. The moving parties now seek summary judgment on these claims, contending that the parties have failed to establish entitlement to a salvage award under admiralty principles.

## ANALYSIS

Because this matter is before the Court on a motion for summary judgment, the question is whether the evidentiary materials on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a summary judgment motion is properly made and supported under Rule 56(c), the nonmoving party may not rest on the mere allegations of its pleadings but, rather, must come forward with "specific facts" showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). Accordingly, summary judgment must be entered against a nonmoving party who bears the burden of proof at trial on a claim when that party fails to make an evidentiary showing in opposition to the motion sufficient to establish the existence of an element essential to the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2253, 91 L.Ed.2d 265 (1986). However, credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are functions for the trier-of-fact at trial, not for the judge on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* Trial courts are to proceed with caution in granting summary judgment and may deny summary judgment in

a case where there is reason to believe that the better course would be to proceed to a full trial. *Id.,* at 2513–14.

■ To prevail on a salvage claim in admiralty, a claimant must prove three elements:

(1) A marine peril;

(2) service voluntarily rendered where not required by an existing duty;

(3) success in whole or in part in saving the vessel or contribution to such success.

*The "Sabine",* 101 U.S. (11 Otto) 384, 25 L.Ed. 982 (1879); *West Coast Shipping Brokers Corp. v. Ferry "CHUCHEQUE-RO",* 582 F.2d 959, 960 (5th Cir.1978). The parties agree that the KAY A. ECK-STEIN was in peril at the time of the fire. Thus, only the remaining two elements are disputed.

The moving parties raise three major arguments to defeat the salvage claims at issue:

(1) The claimants' efforts to save the boat were unsuccessful.

(2) The claimants cannot show entitlement to a salvage award because they were performing an existing duty in accordance with their positions.

(3) To the extent that some of the crew members' lives may have been saved, these actions, while commendable, are not compensable in a salvage action.

■ On the first issue, the rule in salvage cases has always been that only success is rewarded. *West Coast Shipping,* supra. While the distressed vessel must be saved, however, it is unnecessary that it be saved solely by the one seeking the salvage award. *Id.* The claimant only need render some beneficial service to the distressed vessel that contributed to its relief from danger. *Id.*

■ To establish a salvage claim, it is not necessary for the claimant to actually complete the work of saving the property. *The Annie Lord. The Flora L. Oliver.,* 251 F. 157, 159 (D.Mass.1917). It is sufficient if he endeavors to do so, and his efforts have a causal relation to the property's eventual preservation. *Id.* "Success" in salvage law is "preservation of the property for the benefit of the owner." *Evanow v. M/V Neptune,* 163 F.3d 1108, 1115 (9th Cir.1998).

■ As to the "voluntariness" part of the test, it is established law that firefighters are precluded from obtaining a salvage award when the salvage work they perform is in the course of their existing duties as firefighters. *Firemen's Charitable Assoc. v. Ross,* 60 F. 456, 458–459 (5th Cir.1893). However, modern cases have narrowed this "pre-existing" duty exception, and where a person performs a salvage service that is outside the normal scope of his employment, he is entitled to a salvage award. *Markakis v. S/S Volendam,* 486 F.Supp. 1103, 1109 (S.D.N.Y. 1980).

■ Applying these precepts to the present case, there are genuine issues of material fact that preclude summary judgment.

On the "success" element of the claim, it is undisputed that the claimants did not succeed in putting out the fire. However, success need not be measured in so narrow a fashion. The claimants could, for example, prevail if they could show their firefighting efforts helped prevent the boat from becoming a total loss or otherwise limited the amount of damage until the fire could be extinguished by other means.

The claimants have submitted an affidavit from William McNeal, a former licensed tow operator, towing company manager and marine equipment appraiser.

(R.Doc. 60, Exhibit 9.) McNeal estimated the value of the boat at nearly $1.8 million. (*Id.*, p. 3.)

The movants argue that the Court already has determined that the value of the KAY A. ECKSTEIN was $10,943, which is the value of the freight at the time of the fire. (R.Doc. 4.) Because the claimants have not yet filed a challenge to this value under Rule F(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the movants argue, this order is *res judicata* and establishes the boat's value. By implication, the movants argue, this demonstrates the claimant's lack of success because, in accordance with this order, the boat has no value.

Because this is a summary judgment proceeding, however, the critical question is whether the claimants have presented sufficient evidence to create a genuine issue of material fact. McNeal's affidavit does so. If the Court were to accept McNeal's appraisal of the boat, it is likely the claimants could prevail on the "success" issue.

The movants' position on challenging their $10,943 appraisal would be correct if the claimants had failed to file a challenge under Rule 7(F) by the time of trial. However, these proceedings have not yet reached that stage. Obviously, the claimants dispute the movants' valuation of the KAY A. ECKSTEIN. The Court is aware of no authority for the proposition that a ship owner is entitled to summary judgment on its salvage claim simply because it managed to file a motion for summary judgment before the claimants had a chance to file a Rule F(7) motion. Be-

cause there is no procedural bar to the claimants filing such a motion, and because the claimants have submitted sufficient summary judgment evidence challenging the movants' valuation of the boat, a disputed issue of fact exists as to whether the claimants' efforts were successful.[1]

On the voluntariness issue, the present case is complicated by the fact that the claimants in this case are **volunteer** firefighters. Moreover, it is unclear from the summary judgment evidence whether, under the circumstances, the claimants had an existing duty to undertake the firefighting efforts.

Movants refer to the parish Fire Protection District's Standard Operating Procedure, which says the district will provide emergency services in conjunction with other agencies and provide fire suppression to West Feliciana Parish. However, these procedures do not fully explain whether a "duty" exists. When admiralty courts speak of "duty" in this context, they generally refer to a duty imposed by contract, law or official duties of employment. E.g., *Treasure Salvors, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel*, 556 F.Supp. 1319, 1340 (S.D.Fla.1983); *Sands v. One Unnamed 23' Seacraft, Pleasure Vessel*, 959 F.Supp. 1488, 1493 (M.D.Fla.1997); *Markakis v. S/S Volendam*, supra, at 1108–1109.

There is insufficient evidence, at this stage of the proceedings, to support the conclusion that the parish firefighters had a pre-existing duty to fight the fire aboard the KAY A. ECKSTEIN. For example, there is no evidence that the district had equipment that was suitable for fighting a

---

1. McNeal's affidavit also represents that the firefighting efforts had the specific tangible results of preserving the hull's integrity and preserving the fuel, ratchets and reduction gears that the fire otherwise would have destroyed. While this evidence also bears

upon the disputed fact issue regarding the success of the operations, the Court has concentrated on the disputed value for a simple reason: If the value is as McNeal says it is, then obviously, the firefighting efforts would have at least been somewhat successful.

fire on the Mississippi River. It had no fireboat of its own. To the contrary, the district had to concoct a plan on the spot to place a pumper truck aboard the ACADIA and set sail for the KAY A. ECKSTEIN. If indeed the district's normal firefighting responsibilities included fighting fires aboard vessels in the Mississippi River, one might ask why the district had no maritime firefighting equipment in its inventory.

As to the town firefighters, it is undisputed they were volunteers, and there is no evidence to suggest they had a pre-existing duty to engage in firefighting activities outside of the town's boundaries.

Rabalais was a ferry superintendent, and Richard was the captain of the CEPCO II, a fleet boat for Cajun Electric Power Cooperative. There is no evidence in the record to suggest that helping with a firefighting effort on the Mississippi River was part of their normal job duties.[2]

Finally, the movants contend that because much of the claimants' arguments center around the rescue of crew members, their claims must fail because of the general rule that saving lives alone does not qualify a claimant for a salvage award. Again, however, factual disputes prevent summary judgment on this issue.

46 U.S.C.App. § 729 provides:
Salvors of human life, who have taken part in the services rendered on the occasion of the accident giving rise to salvage, are entitled to a fair share of the payment awarded to the salvor for salving the vessel or other property or preventing or minimizing damage to the environment.

This is the latest version of the statute, which went into effect in 1991. The older version, which became effective in 1912, read:

Salvors of human life, who have taken part in the services rendered on the occasion of the accident giving rise to the salvage, are entitled to a fair share of the remuneration awarded to the salvors of the vessel, her cargo, and accessories.

The Court has not located any reported cases that specifically address the change in language, which occurred as a result of Public Law 241, 105 Stat 2208 (1991). However, there appears to be no change in the settled rule that an award for saving a life is considered a share of, and not separate from, a salvage award. *Complaint of Ta Chi Navigation (Panama) Corp., S.A.*, 583 F.Supp. 1322, 1329 (S.D.N.Y.1984). Thus, the issue of whether the claimants are entitled to a salvage award for the saving of human life is connected to the success of the vessel's preservation. Thus, the disputed issue of fact relating to the "success" element also affects this issue. See, 3A *Benedict on Admiralty* § 24, p. 2–18 (7th Ed. Lexis–Nexis 2001).

### RECOMMENDATION

Accordingly, it is recommended that the Motion for Summary Judgment and Motion for Partial Summary Judgment of Iowa Fleeting Service, Inc., Bluegrass Marine, Inc. and Marquette Transportation Co., Inc. (R.Doc. 49) be denied.

---

2. The movants suggest that Richard arguably provided a service for the barges by holding them to the bank, but that this amounted to no service to the KAY A. ECKSTEIN. This may or may not be true. However, the present evidence is insufficient for the Court to determine what effect, if any, Richard's act of holding the tow against the bank had in stabilizing the KAY A. ECKSTEIN's position and whether this had any beneficial effect on the firefighting efforts.