[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12013
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2011
JOHN LEY
CLERK

D.C. Docket No. 0:06-cv-61635-MGC

THOMAS O'HAGAN,
FRANCISCO ARROYO,

Plaintiffs - Appellees,

versus

M&T MARINE GROUP, LLC,
in personam, a Luhrs vessel with Hull number LHRLC298J405,
a Lurhs vessel with Hull number LHRPP105F506,
a Lurhs vessel with Hull number LHRTC1131203
and a Cruise vessel with Hull number CRSNGA1314405,
their engines, equipment, boats, machinery, furnishing,
d.b.a. Northside Marine Sales,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 19, 2011)

Before CARNES, BARKETT, and KRAVITCH, Circuit Judges.

PER CURIAM:

This case involves a claim for a salvage award brought in admiralty by Thomas O'Hagan and Francisco Arroyo against M&T Marine Group, LLC. O'Hagan and Arroyo sought an award for voluntary services they performed with the help of three other individuals, which resulted in saving three of M&T's yachts from damage and possible loss during a severe South Florida storm.

## I.

### A.

On the morning that Hurricane Wilma blew through South Florida in October 2005, O'Hagan and Arroyo, who both worked as boat maintenance and repair subcontractors for M&T from time to time, were at their respective residences, which overlooked the floating docks where M&T kept its yachts. After seeing that the docks the yachts were moored to were sinking and pulling the yachts under with them, O'Hagan and Arroyo ventured out to weather the violent storm and cut the lines connecting the yachts to the floating docks. Joining them in their efforts were two employees of Arroyo's boat repair business, Alain

Thelusma and Dillon Silver.[1] In addition to cutting lines, the four of them relocated the yachts to a nearby seawall, pumped out water that the yachts had taken on, and took other steps necessary to preserve and secure the yachts. An onlooker, Dave, whose last name is unknown, also assisted the four of them, but only in untying the boats from the sinking floating docks. Thelusma and Silver were both paid approximately $250 by Arroyo for their time that day as part of their regular weekly wages.

### B.

O'Hagan and Arroyo filed a complaint in admiralty on October 27, 2006, seeking a salvage award from M&T. On February 28, 2007, after M&T had answered the complaint, the district court administratively closed this case because M&T had filed for bankruptcy. After O'Hagan and Arroyo obtained permission from the bankruptcy court to pursue their salvage claims, the district court reopened this case on April 24, 2009.

In an August 4, 2009 order, the district court scheduled trial for March 2010 and also set out various discovery deadlines, including O'Hagan and Arroyo's expert witness disclosure deadline of November 5, 2009 and a deadline for

---

[1] Although the district court's findings are unclear, the record shows that Thelusma and Silver were employees of Arroyo and not O'Hagan.

completion of expert discovery by December 3, 2009. On November 2, 2009, O'Hagan and Arroyo filed an expert witness list, which included the topics that the expert would testify to, but failed to include an expert report. M&T filed a motion to strike that expert from the witness list on November 16, 2009, and a motion for enlargement of time to disclose its own expert if the district court should deny its motion to strike.

On December 4, 2009, one day after discovery had closed, O'Hagan and Arroyo responded to M&T's motion to strike their expert, asserting that after M&T's motion was filed they had provided M&T with full answers to expert interrogatories and a complete expert report.[2] They also offered to cure any prejudice from their delay, stating that they would not oppose any requests from M&T to file its expert disclosures late or seeking leave to depose their expert. M&T never took O'Hagan and Arroyo up on their offer.

On March 24, 2010, the morning of the first day of trial, the district court denied M&T's motion to strike O'Hagan and Arroyo's salvage services expert. The district court found that O'Hagan and Arroyo's expert disclosure was not timely, but it noted that O'Hagan and Arroyo represented that they had produced a

---

[2] M&T argued in a reply to O'Hagan and Arroyo's response that the expert report still failed to meet the requirements of Federal Rule of Civil Procedure 26(a), but it never provided the district court with the allegedly inadequate report.

detailed expert report and answers to expert interrogatories on or before December 4, 2009, and they had offered to waive any discovery deadlines to allow M&T to disclose additional experts or depose their expert. While not condoning O'Hagan and Arroyo's disregard for the Federal Rules of Civil Procedure, the district court found their untimeliness harmless.

After the order was issued, M&T moved for continuance at the outset of trial, claiming that it needed time to get its own salvage services expert. The district court denied that motion, stating that M&T "knew this case was going to trial" and "knew [it] w[as] disputing what [O'Hagan and Arroyo] had to say in regard to damages." In denying that motion, however, the court gave M&T leave to depose O'Hagan and Arroyo's expert before he took the stand on the second day of trial, March 26, 2010.

At trial, Arroyo and O'Hagan testified about the value of the yachts and the repairs required after the storm had passed. Arroyo testified without objection that the three yachts had prices of $700,000, $800,000, and $400,000 to $500,000 respectively, because "they ha[d] on a sticker with the price" at the time of the salvage service. M&T did not rebut that evidence. Arroyo also testified without objection that he and O'Hagan had to remove debris and clean the water off the yachts, including cleaning the engine, the generator, and parts of the electrical

system. He further testified that they changed out the fuel filters and starters in at least one yacht the day after the hurricane, but it is not clear from the record whether that work was required as a result of damage caused by the hurricane.

O'Hagan testified to the total cost of the repairs they made to the three yachts on the day of the hurricane. It is not clear from the record whether the total repair costs included changing out the fuel filters and starters on at least one of the yachts the day after the hurricane. M&T did not rebut the evidence of the repairs made or the cost of those repairs. After hearing all of the evidence presented in the two-day trial, the district court issued its findings of fact and conclusions of law on March 31, 2010.

The district court concluded that the post-salvage value of a vessel is generally the fair market value of the property and that the burden is on the suing salvors to prove it. But the district court noted that where there is no established market value for a vessel, the use of the pre-casualty book values for the yachts less the costs of any repairs needed after salvage is a permissible method for calculating post-salvage, pre-repair value.[3] Because neither party presented

---

[3] Although this Court has not squarely addressed the question of proper post-salvage valuation methods, a few district courts in this circuit have addressed the question, and their decisions support the district court's statement of the law in this case, which neither party disputes. See Atlantis Marine Towing v. M/V Elizabeth, 346 F. Supp. 2d 1266, 1273–74 (S.D. Fla. 2004); Ocean Servs. Towing and Salvage, Inc. v. Brown, 810 F. Supp. 2d 1258, 1263 (S.D. Fla. 1993) (citing S.F. Bar Pilots v. Vessel Peacock, 733 F.2d 680, 682 (9th Cir. 1984), Nolan v.

evidence of the fair market value, the district court turned to the evidence presented about the pre-casualty book values and post-salvage repairs. Based on Arroyo's testimony about the sticker prices, the court found that the yachts' pre-casualty book value was $1,950,000 and that the total cost of the post-salvage repairs was $12,000.

The district court set the salvage award at $290,700—fifteen percent of the $1,938,000 post-salvage value—plus prejudgment interest. The district court also made explicit findings of fact that during the course of the salvage services O'Hagan and Arroyo were "assisted by three (3) other individuals—Alain Thelusma, Dillon Silver, and Dave (last name unknown)" and that Dave "assisted with untying the boats from the sinking docks." The district court nevertheless concluded as a matter of law that the salvage award "should be divided equally between" only O'Hagan and Arroyo. In deciding to split the total award between only those two, the district court without citation to authority held as a matter of law that Thelusma and Silver were not co-salvors because they "were employed by [Arroyo], and [Arroyo] paid them for their time and efforts." It further held that Dave was not a co-salvor because "there has been no evidence presented as to the

A.H. Basse Rederiaktieselskab, 267 F.2d 584, 588–89 (3d Cir. 1959); Rand v. Lockwood, 16 F.2d 757, 759 (4th Cir. 1927)).

extent of the effort expended by [Dave], and I do not find mere allusions to his presence during the salvage sufficient to include him as a co-salvor."

After issuing its findings of fact and conclusions of law, the district court entered judgment against M&T and awarded O'Hagan and Arroyo $290,700 plus prejudgment interest. M&T has appealed that judgment, contending that the district court failed to properly abate the salvage award to account for the non-suing co-salvors; failed to properly calculate the post-salvage, pre-repair value of the vessels; and abused its discretion by denying M&T's request for a continuance before trial.[4] We address each contention in turn.

II.

In an admiralty bench trial, we review the district court's factual findings only for clear error, and we review de novo its conclusions of law. Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1214 (11th Cir. 2006). M&T contends that the district court misapplied the law of salvage to the facts of this case by concluding that Thelusma, Silver, and Dave were not co-salvors. Because

---

[4] M&T also contends that the district court incorrectly applied prejudgment interest to the salvage award for the time period of M&T's bankruptcy stay from February 28, 2007 though April 24, 2009 while this admiralty lawsuit was administratively closed. But with ample opportunity to do so, M&T did not raise this issue before the district court, and we thus decline to consider it here. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." (quotation marks omitted)).

the district court did not account for those non-suing co-salvors in its award, M&T argues that the court improperly apportioned their share of the salvage award to O'Hagan and Arroyo when that share instead should have inured to the benefit of M&T.[5]

The law of salvage requires the owner of a vessel that was in impending peril to pay a reward to individuals, or salvors, for voluntary services rendered to save the vessel from damage that would otherwise have resulted from the peril. See The Blackwall, 77 U.S. (10 Wall.) 1, 12 (1869). Essentially, based on a presumption that a prudent owner would want the ship to be saved, the law implies a reward contract between the owner of the distressed ship and the salvor or co-salvors who voluntarily save it. See Int'l Aircraft Recovery, L.L.C. v.

---

[5] Although an affirmative defense in the nature of abatement was not included in M&T's answer, M&T has not waived it. The issue of "the value of any salvage services rendered by" O'Hagan and Arroyo was raised by the parties in the joint pretrial stipulation. The specific issue of abating the value of those services due to any co-salvor's efforts was raised in M&T's proposed findings of fact and conclusions of law that were filed nearly a month before trial. M&T also introduced without objection from O'Hagan and Arroyo some evidence at trial regarding the non-suing co-salvors' participation, and the district court made specific findings and conclusions about the co-salvor issue in its findings of fact and conclusions of law. See Pulliam v. Tallapoosa County Jail, 185 F.3d 1182, 1185 (11th Cir. 1999) (noting that "[r]equiring a defendant to plead certain defenses affirmatively serves the important purpose of providing notice to the plaintiff and the court" and finding that the pretrial order, while not directly and specifically raising the affirmative defense, gave the plaintiff "fair notice of what the trial would be about").

Everyone had fair notice that the value of O'Hagan and Arroyo's salvage services, including any potential abatement of that value based on the efforts of any non-suing co-salvors, would be at issue.

Unidentified, Wrecked and Abandoned Aircraft, 218 F.3d 1255, 1261 (11th Cir. 2000); see also The Blackwall, 77 U.S. at 14 ( "Compensation as salvage is not viewed by the admiralty courts merely as pay, on the principle of a quantum meruit, . . . but as a reward given for perilous services, voluntarily rendered, and as an inducement to seamen and others to embark in such undertakings to save life and property.")  The law thus creates an incentive for people to take risks to save ships that they are not obligated to save by imposing an obligation on the ship's owner to pay a reward for salvage services even if the owner would not have wanted those services rendered.  See id.

For the salvor's services to be voluntarily rendered, the salvor "must be under no official or legal duty to render the assistance."  In re American Oil, 417 F.2d 164, 167 (5th Cir. 1969).[6]  We have also stated that "a  private salvor[] renders voluntary assistance where no duty to help is owed the person or vessel in distress."  Id. at 168.  A duty owed by one salvor to another does not bar both from making a salvage claim because "[t]he pre-existing duty which can disqualify a salvor from recovering must run between the salvor and the owner of the vessel . . . salvaged."  Id. at 169.

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

It is also well settled that the services of everyone who participated in the salvage operation must be considered regardless of whether all of the salvors are before the district court, and the relative importance of their contribution must be appraised before the salvage award is made.  See The Blackwall, 77 U.S. at 12; Legnos v. M/V Olga Jacob, 498 F.2d 666, 672 n.10 (5th Cir. 1974) ("Thus, on remand the [c]ourt . . . must determine the total amount for salvage services performed by all including the two [non-suing] groups and the claiming salvors and then make an award to the claiming salvors in proportion to their own contribution.").  It is also a "well-established rule of salvage law that, when one co-salvor sues but others do not, the share of the award due to the nonsuing co-salvors goes to the owner, not to the suing co-salvor." Plataro Ltd., Inc. v. Unidentified Remains of a Vessel, 695 F.2d 893, 903 (5th Cir. 1983); see also J.M. Guffey Petroleum Co. v. Borison, 211 F. 594, 602 (5th Cir. 1914) ("Nonprosecution of their claim by one set of salvors inures to the benefit of the owners of the vessel, and not to that of other salvors who do prosecute their claim.").  Thus, while the district court has discretion in deciding how big a share of the salvage award each co-salvor gets, it may not give the shares of the nonsuing co-salvors to the ones that brought suit.  Those shares inure to the benefit of the owner of the salvaged vessels.

11

In this case, along with O'Hagan and Arroyo, the district court explicitly found that Thelusma and Silver helped to save the yachts from impending peril. And the assistance they rendered was voluntary because they were not legally obligated to M&T to render the services. Thelusma and Silver were working for Arroyo in his boat repair and maintenance business, and neither Thelusma nor Silver nor Arroyo, as their employer, had a pre-existing duty to preserve M&T's yachts. But as voluntary co-salvors who helped to save the yachts while under no duty to M&T to do so, Thelusma and Silver were entitled to some share of the award. Since they did not file claims, their shares of the award should have inured to the benefit of M&T as the owner of the salvaged vessel. The district court erred by not accounting for Thelusma or Silver in apportioning the salvage award to O'Hagan and Arroyo.

Regarding Dave, the district court's findings of fact and conclusions of law conflict. The court found that he untied some lines, but concluded that the mere allusion to his presence is not enough. A co-salvor "must merely have rendered some beneficial service to the distressed vessel which contributed to its relief from danger." W. Coast Shipping Brokers Corp., M/V "Cebu I" v. Ferry "Chuchequero", 582 F.2d 959, 960 (5th Cir. 1978); Legnos, 498 F.2d at 672 ("So long as the services are voluntary . . . , a bystander or interloper is eligible for

12

salvage award in proportion to the value of his contributory efforts."). The district court's factual finding about Dave's voluntary participation in untying some of the lines that bound the yachts to the dock, which was essential to saving them, conflicts with its legal conclusion that he was not a co-salvor. It was error not to apportion some part of the award to Dave for his assistance in untying some lines, and because Dave did not make a claim for his share, it was also error not to credit his share of the award to M&T.

III.

M&T also contends that the district court incorrectly determined the post-salvage, pre-repair value of the vessels. We do not "disturb a salvage award unless it is based on erroneous principles or a misapprehension of the facts or is so grossly excessive or inadequate as to be deemed an abuse of discretion." Compania Galeana, S.A. v. M/V Caribbean Mara, 565 F.2d 358, 360 (5th Cir. 1978). And as we have already noted, we review the district court's findings of fact only for clear error. Dresdner Bank AG, 463 F.3d at 1214.

The district court did not clearly err by accepting Arroyo's competent testimony, which was unrebutted, about the sticker prices as the pre-casualty book value of the three yachts. If the repair work that consisted of replacing the starters and fuel filters on at least one yacht the day after the hurricane did result from the

13

storm, however, the district court may have erred by not considering those repairs in its calculation. Because the record is not clear about whether that repair work was in fact included in the total repair costs or was the result of damage caused by the hurricane, the district court did not clearly err in finding the total repair costs to be $12,000.[7]

## IV.

Finally, M&T argues that the district court erred in denying its motion for continuance. We review the denial of a motion for continuance only for an abuse of discretion, United States v. Valladares, 544 F.3d 1257, 1261 (11th Cir. 2008), and it will not be overturned unless it is arbitrary or unreasonable. Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd., 326 F.3d 1333, 1351 (11th Cir. 2003).

In this case, M&T was not ambushed on the eve of trial by O'Hagan and Arroyo's expert. Instead, it had notice on August 4, 2009 that the trial was set for March 2010, had notice of the expert and what he would be testifying about from O'Hagan and Arroyo's expert list on November 2, 2009, had answers to expert

---

[7] M&T also contends that the district court erred by not considering the $1,213,500 amount that was specified in O'Hagan and Arroyo's proposed findings of fact and conclusions of law and other pre-trial filings with the district court. M&T, however, had moved the court to strike the factual basis for that amount—the Letters of Undertaking from M&T's insurance company—and the court granted that motion. That amount, which M&T moved the court to strike before trial, was thus not admitted evidence that the district court could consider in making its factual findings and conclusions of law.

14

interrogatories and an expert report from O'Hagan and Arroyo by December 4, 2009, and had agreed to a joint pre-trial stipulation filed with the district court about a month before trial, which listed the salvage services expert as an expert witness who would testify at trial. Although discovery had technically closed on December 3, 2009, O'Hagan and Arroyo offered to cure any prejudice by not opposing any requests from M&T to file late expert disclosures or for leave to depose O'Hagan and Arroyo's expert. Instead of taking them up on their offer, M&T chose to rely solely on its November 16, 2009 motion to strike the expert.

Disappointed with the outcome of that strategic choice when the district court denied its motion to strike on the morning of trial, M&T asked for more time. The district court denied the motion because M&T had notice of the expert and had plenty of time before trial to get its own expert. To cure any undue prejudice, the district court gave M&T the opportunity to depose O'Hagan and Arroyo's expert before he testified at trial. The district court's denial of M&T's motion for continuance was not arbitrary, unreasonable, or an abuse of its discretion.

V.

While we affirm in all other respects, we reverse the district court's judgment in part and remand this case for the limited purpose of properly

15

apportioning the salvage award among the suing and non-suing co-salvors. Specifically, the district court should determine what share of the salvage award, no matter how small, Dave would have been awarded if he had made a salvage claim. The court should also determine Thelusma's and Silver's shares of the salvage award, taking into account their roles in salvaging the yachts and the compensation they received from Arroyo for that work. Any amount apportioned to Thelusma, Silver, and Dave must be deducted from the total award to O'Hagan and Arroyo and will thereby inure to the benefit of M&T.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**